ADAMS ᴇᴛ ᴀʟ. *v.* UNITED STATES ᴇᴛ ᴀʟ.

No. 889.   Argued May 10, 1943.—Decided May 24, 1943.

*Mr. Thurgood Marshall,* with whom *Mr. W. Robert Ming, Jr.,* was on the brief, for Richard P. Adams et al.

*Mr. Robert L. Stern,* with whom *Solicitor General Fahy, Assistant Attorney General Berge,* and *Messrs. Oscar A. Provost* and *W. Marvin Smith* were on the brief, for the United States et al.

Mʀ. Jᴜsᴛɪᴄᴇ Bʟᴀᴄᴋ delivered the opinion of the Court.

The Circuit Court of Appeals for the Fifth Circuit has certified to us two questions of law pursuant to § 239 of the Judicial Code.   The certificate shows that the three defendants were soldiers and were convicted under 18 U. S. C. §§ 451, 457, in the federal District Court for the Western District of Louisiana, for the rape of a civilian woman.   The alleged offense occurred within the confines of Camp Claiborne, Louisiana, a government military camp, on land to which the government had acquired title at the time of the crime.   The ultimate question is

whether the camp was, at the time of the crime, within the federal criminal jurisdiction.

The Act of October 9, 1940, 40 U. S. C. § 255, passed prior to the acquisition of the land on which Camp Claiborne is located, provides that United States agencies and authorities may accept exclusive or partial jurisdiction over lands acquired by the United States by filing a notice with the Governor of the state in which the land is located or by taking other similar appropriate action. The Act provides further: "Unless and until the United States has accepted jurisdiction over lands hereafter to be acquired as aforesaid, it shall be conclusively presumed that no such jurisdiction has been accepted." The government had not given notice of acceptance of jurisdiction at the time of the alleged offense.[1]

The questions certified are as follows:

"1. Is the effect of the Act of Oct. 9, 1940, above quoted, to provide that, as to lands within a State thereafter acquired by the United States, no jurisdiction exists in the United States to enforce the criminal laws embraced in United States Code Title 18, Chapter 11, and especially Section 457 relating to rape, by virtue of Section 451, Third, as amended June 11, 1940, unless and until a consent to accept jurisdiction over such lands is filed in behalf of the United States as provided in said Act?

"2. Had the District Court of the Western District of Louisiana jurisdiction, on the facts above set out, to try and sentence the appellants for the offense of rape committed within the bounds of Camp Claiborne on May 10, 1942?"

Since the government had not given the notice required by the 1940 Act, it clearly did not have either "exclusive or partial" jurisdiction over the camp area. The only pos-

---

[1] Exclusive jurisdiction over the lands on which the Camp is located was accepted for the federal government by the Secretary of War in a letter to the Governor of Louisiana, effective January 15, 1943.

sible reason suggested as to why the 1940 Act is inapplicable is that it does not require the government to give notice of acceptance of "concurrent jurisdiction." This suggestion rests on the assumption that the term "partial jurisdiction" as used in the Act does not include "concurrent jurisdiction."

The legislation followed our decisions in *James* v. *Dravo Contracting Co.,* 302 U. S. 134; *Mason Co.* v. *Tax Commission,* 302 U. S. 186; and *Collins* v. *Yosemite Park Co.,* 304 U. S. 518. These cases arose from controversies concerning the relation of federal and state powers over government property and had pointed the way to practical adjustments. The bill resulted from a coöperative study by government officials, and was aimed at giving broad discretion to the various agencies in order that they might obtain only the necessary jurisdiction.[2] The Act created a definite method of acceptance of jurisdiction so that all persons could know whether the government had obtained "no jurisdiction at all, or partial jurisdiction, or exclusive jurisdiction."[3]

Both the Judge Advocate General of the Army[4] and the Solicitor of the Department of Agriculture[5] have construed the 1940 Act as requiring that notice of acceptance be filed if the government is to obtain concurrent jurisdiction. The Department of Justice has abandoned the view of jurisdiction which prompted the institution of this pro-

---

[2] In the words of a sponsor of the bill, the object of the act was flexibility, so "that the head of the acquiring agency or department of the Government could at any time designate what type of jurisdiction is necessary; that is, either exclusive or partial. In other words, it definitely contemplates leaving the question of extent of jurisdiction necessary to the head of the land-acquiring agency." Hearings, House Committee on Buildings and Grounds, H. R. 7293, 76th Cong., 1st Sess., p. 5.

[3] *Ibid.,* 7.

[4] Ops. J. A. G. 680.2.

[5] Opinion No. 4311, Solicitor, Department of Agriculture.

ceeding, and now advises us of its view that concurrent jurisdiction can be acquired only by the formal acceptance prescribed in the Act. These agencies coöperated in developing the Act, and their views are entitled to great weight in its interpretation. Cf. *Bowen* v. *Johnston*, 306 U. S. 19, 29–30. Besides, we can think of no other rational meaning for the phrase "jurisdiction, exclusive or partial" than that which the administrative construction gives it.

Since the government had not accepted jurisdiction in the manner required by the Act, the federal court had no jurisdiction of this proceeding. In this view it is immaterial that Louisiana statutes authorized the government to take jurisdiction, since at the critical time the jurisdiction had not been taken.[6]

Our answer to certified question No. 1 is Yes and to question No. 2 is No.

*It is so ordered.*

---

[6] Dart's Louisiana Stat. (Supp.) 2898. In view of the general applicability of the 1940 Act, it is unnecessary to consider the effect of the Weeks Forestry Act, 16 U. S. C. 480, and the Louisiana statute dealing with jurisdiction in national forests, Dart's Louisiana Stat. 3329, even though the land involved here was originally acquired for forestry purposes.