STATE v. ROBERT FRANKLIN BURELL.

(Filed 2 February 1962.)

**1. Appeal and Error § 22—**

A notation in the notice of appeal that appellant excepts to each finding of fact and conclusion of law in conflict with his contentions is a broadside exception and does not bring up for review the findings of fact or the evidence upon which they are based.

**2. Criminal Law § 17—**

Where the United States Government has not accepted jurisdiction over lands acquired by it for a housing project for military and civilian personnel near a military base by filing a notice of such acceptance with the Governor of the State, 40 U.S.C.A. § 255, the Federal Courts have no jurisdiction to try a defendant for an offense committed within such area, there being no other manner prescribed by the laws of the State by which the Federal Government might accept jurisdiction.

**3. Statutes § 5—**

Where a literal interpretation of the language of a statute would lead to absurd results and contravene the manifest purpose of the statute, the reason and purpose of the law will be given effect and the strict letter thereof disregarded.

**4. Criminal Law § 17—**

Where the Federal Government has not accepted jurisdiction over crimes committed on lands acquired by it for a housing project for its military and civilian personnel connected with a military base, G.S. 104-7 will not be interpreted as ousting the jurisdiction of the State courts to try offenses committed within such area when the exercise of jurisdiction by the State court does not interfere with the operation of the Federal project, since such construction would lead to the absurd result of creating a *hiatus* and an unwarranted diminution of the State's sovereignty in contravention of public policy.

**5. Criminal Law § 173—**

Where a defendant in a post-conviction hearing attacks the validity of his conviction on two separate grounds, and, after remand of a favorable determination for defendant upon one of the grounds, advises the court through his counsel that he had abandoned the other ground, which had been determined adversely to him on the prior hearing, the judgment on the second hearing, affirmed on appeal, is conclusive as to both grounds, since a party will not be allowed to try a cause or proceeding piecemeal.

On writ of *certiorari*, granted upon motion of defendant, G.S. 15-222, to review a judgment entered by *Cowper, J.*, in a Post-Conviction Hearing, authorized by G.S. 15-217 *et seq.*, denying defendant any relief, at May 1961 Term of CRAVEN.

This is the third time this case has been before the Court. At the November Term 1959 of Craven County Superior Court defendant was convicted by a jury of the felony of an assault with intent to commit rape upon Emma Estelle Harrison, the wife of a staff sergeant stationed at the Marine Corps Air Station at Cherry Point, North Carolina. Defendant was a staff sergeant stationed at the same place. The trial court entered judgment that defendant be confined in the State's Prison for fifteen years, and he appealed to this Court. We found no error in the trial, and the case is reported in 252 N.C. 115, 113 S.E. 2d 16.

After we found no error in the trial, defendant through his counsel instituted a proceeding under our Post-Conviction Hearing Act to review the constitutionality of his trial. In his petition he alleged that his constitutional rights were violated in that the offense of which he was convicted was committed within an area over which the United States Courts had exclusive jurisdiction, and the State Court had no jurisdiction, and second, that the State withheld or failed to disclose evidence which it had favorable to him. This proceeding came on to be heard at 18 November 1960 Term of Craven County Superior Court by Judge Morris. Judge Morris, after hearing the evidence offered and argument of counsel for defendant and for the State, found facts to this effect: Jurisdiction over the felony charged against defendant was vested in the United States District Court for the Eastern District of North Carolina, and the State Court had no jurisdiction, and second,

the contention of defendant that his constitutional rights had been denied him by the State withholding or suppressing evidence favorable to him was without foundation or merit. Whereupon Judge Morris ordered that the case in the State Court against defendant be dismissed, and that defendant be delivered to the proper officials of the United States Government for the Eastern District of North Carolina. Appearance bond was fixed at $50,000.00. We allowed the State's petition for a writ of *certiorari.* We remanded the proceeding to the lower court for the reason that Judge Morris' findings of fact were insufficient for us accurately and safely to pass upon his conclusion of law. *S. v. Burell,* 254 N.C. 317, 119 S.E. 2d 3.

The proceeding came on to be heard again by Judge Cowper at the term above shown. At the beginning of the hearing defendant through his counsel advised the court that he is not now pursuing his contention that at the trial his constitutional right was violated by the State withholding or failing to disclose evidence it had favorable to him, but was relying upon his contention that the State Court had no jurisdiction to try him upon the indictment. Judge Cowper, after considering the pleadings, the evidence offered by defendant and the State, made elaborate findings of fact. We summarize his findings of fact relevant to a determination of the proceeding before us, except when we quote:

The felony, for which defendant was convicted at the November 1959 Term of Craven County Superior Court, occurred at No. 16 Rosebay Court, which is a part of a federal housing project known as Slocum Village, situate at Havelock, Craven County, North Carolina, adjacent to the United States Marine Corps Air Station at Cherry Point, North Carolina. Slocum Village Housing area is the property of the United States by virtue of a judgment rendered on 31 May 1958 in the District Court of the United States for the Eastern District of North Carolina in an action entitled *"United States of America v. 337.01 acres of land, more or less, in Craven County, North Carolina, Hancock Village, et al."* A declaration of taking in this action was filed on 26 May 1958 on behalf of the United States by F. A. Bantz, assistant secretary of the Navy, and in part states: "And I do further declare that the public use to which said lands are to be put is for the housing of military and civilian naval personnel stationed or employed at the U. S. Marine Corps Air Station, Cherry Point, North Carolina." The part of the judgment which Judge Cowper quotes provides in effect that the United States shall have immediate and absolute possession, custody, and control of the lands taken.

The felony for which defendant was convicted was committed on lands which were acquired by the United States in the action above set forth.

The area known as Slocum Village, including Rosebay Court, is used for housing of military personnel, civilian personnel employed at Cherry Point Air Station, and other persons not directly or indirectly connected with the Cherry Point Marine Corps Air Station.

"7. Neither the Secretary of the Department of the Navy, nor any other authorized person or agency, accepted or assumed criminal jurisdiction for the United States over the lands on which the crime was committed by Robert Franklin Burell.

"8. Neither the Secretary of the Department of the Navy, nor any other authorized person or agency, has indicated acceptance of criminal jurisdiction on behalf of the United States by filing a notice of such acceptance with the Governor of the State of North Carolina, nor in any other manner as provided in Title 40, Section 255, United States Code.

"9. There has been no communication from the Secretary of the Department of the Navy, or any federal department or agency indicating acceptance of criminal jurisdiction of the property in question in accordance with Title 40, Section 255, United States Code, with the Governor of the State of North Carolina.

"10. Neither the Department of the Navy, nor any other authorized persons or agency, has assumed or exercised criminal jurisdiction over the area known as Slocum Village, including No. 16, Rosebay Court, where the crime in question was committed by Robert Franklin Burell.

"11. The United States has not accepted criminal jurisdiction over the lands known as Slocum Village, including No. 16, Rosebay Court, where the crime in question was committed, as provided by 40 United States Code, Section 255."

Based on his findings of fact Judge Cowper made the following conclusions of law, which we summarize, except when we quote:

One. The United States did not acquire criminal jurisdiction over the Slocum Village Housing area, including No. 16 Rosebay Court apartment, the situs of the crime, by virtue of the judgment in the condemnation action above set forth, or by virtue of the filing of taking in the action.

Two. The United States having failed to accept or assume criminal jurisdiction over the Slocum Village Housing area, including No. 16 Rosebay Court, the situs of the crime, by filing a notice of such acceptance with the Governor of North Carolina, "as provided by 40 United States Code, Section 255, or by other means provided by law," it is now conclusively presumed that no criminal jurisdiction has been acquired by the United States.

Three. "The court finds that although the State of North Carolina, by virtue of the provisions of General Statute 104-7, has agreed to relinguish and cede criminal jurisdiction over the lands condemned by the United States of America, including No. 16 Rosebay Court, the situs of the crime, in the absence of a clear acceptance of such criminal jurisdiction on the part of the United States of America, the State of North Carolina, still retains and maintains criminal jurisdiction over the area."

Four. The Superior Court of Craven County had exclusive jurisdiction to try defendant for the felony charged against him in the indictment.

Five. "That the petitioning defendant having advised the court through counsel that he is no longer pursuing the contention of denial of his constitutional rights on the grounds of evidence being withheld by the State, and no evidence having been offered of same, said defense is deemed to [be] waived and abandoned."

Six. The trial of defendant at the November 1959 Term of Craven County Superior Court was valid and constitutional, and no constitutional rights of his were violated.

Whereupon, Judge Cowper ordered that defendant serve the sentence imposed upon him at the November 1959 Term of Craven County Superior Court.

We allowed defendant's petition for a writ of *certiorari.*

*Attorney General T. W. Bruton, Assistant Attorney General Harry W. McGalliard for the State.*

*Charles L. Abernethy, Jr., for defendant appellant.*

PARKER, J.   The case on appeal has no assignments of error and no grouping of exceptions. In his appeal entries defendant "excepts to each finding of fact and conclusion of law in conflict with his contentions of innocence of the crime for which he was convicted and his contention that the Superior Court of Craven County was without jurisdiction to try him and pass sentence upon him." No exception appears in the record to any finding of fact or conclusion of law, except as noted in the notice of appeal above quoted.

Under our Rules of Practice and our decisions, defendant's above quoted exception is a broadside exception, and presents nothing for our consideration except the question whether the facts found by Judge Cowper support his conclusions of law and judgment. *Hicks v. Russell,* 256 N.C. 34, 123 S.E. 2d 214; *Logan v. Sprinkle,* 256 N.C. 41, 123 S.E. 2d 209; *Putnam v. Publications,* 245 N.C. 432, 96 S.E. 2d 445; *Merrell v. Jenkins,* 242 N.C. 636, 89 S.E. 2d 242.

This Court has consistently held that an "exception must be made to a particular finding of fact and point out specifically the alleged error, and an exception to the findings of fact and the conclusions of law based thereon, is a broadside exception and ineffectual." Strong's N. C. Index, Vol. 1, Appeal and Error, sec. 22, where many cases are cited.

A broadside exception to the findings of fact "does not bring up for review the findings of fact or the evidence on which the findings are based." *Merrell v. Jenkins, supra.* However, a study of the record shows that Judge Cowper's findings of fact are supported by competent legal evidence.

The ultimate question is whether Rosebay Court apartment, the situs of the crime, was at the time of the commission of the crime on 16 August 1959 within the federal criminal jurisdiction, and if not, was it within the State criminal jurisdiction.

The Act of 9 October 1940, 40 U.S.C.A., sec. 255, enacted prior to the acquisition by the United States on 31 May 1958 of the land on which Rosebay Court apartment is located, provides: *"The obtaining of exclusive jurisdiction in the United States over lands or interests therein which have been or shall hereafter be acquired by it shall not be required;* but the head or other authorized officer of any department or independent establishment or agency of the Government may, in such cases and at such times as he may deem desirable, accept or secure from the State in which any lands or interests therein under his immediate jurisdiction, custody, or.control are situated, consent to or cession of such jurisdiction, exclusive or partial, not theretofore obtained, over any such lands or interests as he may deem desirable *and indicate acceptance of such jurisdiction on behalf of the United States by filing a notice of such acceptance with the Governor of such State or in such other manner as may be prescribed by the laws of the State where such lands are situated. Unless and until the United States has accepted jurisdiction over lands hereafter to be acquired as aforesaid, it shall be conclusively presumed that no such jurisdiction has been accepted."* Emphasis ours. The findings of fact by Judge Cowper clearly show that the United States Government has not given notice of acceptance of jurisdiction over the area in which Rosebay Court apartment is situate at the time of the alleged offense.

Defense counsel contends that notice of acceptance of jurisdiction on behalf of the United States is not limited to "filing a notice of such acceptance with the Governor of such State," but acceptance may be "in such other manner as may be prescribed by the laws of the State where such lands are situated." A search on our part shows that the State of North Carolina has no laws prescribing how or in what manner acceptance of jurisdiction by the United States Government may

be done, and counsel for defendant has not pointed out any such laws to us. There is no merit to this contention of defendant's counsel.

G.S. 104-7, which was enacted in 1907, seems to be in conflict with G.S. 104-1, which was enacted earlier. *S. v. DeBerry*, 224 N.C. 834, 32 S.E. 2d 617. G.S. 104-7 states: "The consent of the State is hereby given, . . . , to the acquisition by the United States, by purchase, condemnation, or otherwise, of any land in the State required for the sites for custom houses, courthouses, . . . , or for any other purposes of the government. Exclusive jurisdiction in and over any land so acquired by the United States shall be and the same is hereby ceded to the United States for all purposes except the service upon such sites of all civil and criminal process of the courts of this State; but the jurisdiction so ceded shall continue no longer than the said United States shall own such lands."

The United States Supreme Court has said with reference to the transfer of jurisdiction, in the case of *Silas Mason Co. v. Tax Commission of Washington*, 302 U.S. 186, 82 L. Ed. 187: "As such a transfer rests upon a grant by the State, through consent or cession, it follows, in accordance with familiar principles applicable to grants, that the grant may be accepted or declined. Acceptance may be presumed in the absence of evidence of a contrary intent, but we know of no constitutional principle which compels acceptance by the United States of an exclusive jurisdiction contrary to its own conception of its interests. The mere fact that the Government needs title to property within the boundaries of a State, which may be acquired irrespective of the consent of the State (*Kohl v. United States*, 91 U.S. 367, 371, 372, 23 L. Ed. 449, 451), does not necessitate the assumption by the Government of the burdens incident to an exclusive jurisdiction." To the same effect 91 C.J.S., United States, p. 22; 54 Am. Jur., United States, p. 601.

Upon the facts found by Judge Cowper the decision in *Adams v. United States*, 319 U.S. 312, 87 L. Ed. 1421, is directly in point and controlling in this respect, since the United States Government has not accepted jurisdiction in the manner required by the Federal Act above quoted, the Federal Court has no jurisdiction to try the defendant for the offense with which he is charged in the indictment here.

In the *Adams* case the three defendants were soldiers, and were convicted under 18 U.S.C.A., sections 451, 457, 7 F.C.A., title 18, sections 451, 457, in the Federal District Court for the Western District of Louisiana for the rape of a civilian woman. The alleged offense occurred within the confines of Camp Claiborne, Louisiana, a government military camp on land to which the government had acquired title at the time of the crime. The ultimate question for the Court to decide

was whether the camp was, at the time of the crime, within the federal criminal jurisdiction. The Court in its opinion summarized in part, and quoted in part, the provisions of 40 U.S.C.A., sec. 255, which we have quoted above, and then said:

"Since the Government had not given the notice required by the 1940 Act, it clearly did not have either 'exclusive or partial' jurisdiction over the camp area. The only possible reason suggested as to why the 1940 Act is inapplicable is that it does not require the government to give notice of acceptance of 'concurrent jurisdiction.' This suggestion rests on the assumption that the term 'partial jurisdiction' as used in the Act does not include 'concurrent jurisdiction.'

"The legislation followed our decisions in *James v. Dravo Contracting Co.*, 302 U.S. 134, 82 L. ed. 155, 58 S. Ct. 208, 114 A.L.R. 318; *Silas Mason Co. v. Tax Commission*, 302 U.S. 186, 82 L. ed. 187, 58 S. Ct. 233; and *Collins v. Yosemite Park & C. Co.*, 304 U.S. 518, 82 L. ed. 1502, 58 S. Ct. 1009. These cases arose from controversies concerning the relation of federal and state powers over government property and had pointed the way to practical adjustments. The bill resulted from a cooperative study by government officials, and was aimed at giving broad discretion to the various agencies in order that they might obtain only the necessary jurisdiction. The Act created a definite method of acceptance of jurisdiction so that all persons could know whether the government had obtained 'no jurisdiction at all, or partial jurisdiction, or exclusive jurisdiction.'

"Both the Judge Advocate General of the Army and the Solicitor of the Department of Agriculture have construed the 1940 Act as requiring that notice of acceptance be filed if the government is to obtain concurrent jurisdiction. The Department of Justice has abandoned the view of jurisdiction which prompted the institution of this proceeding, and now advises us of its view that concurrent jurisdiction can be acquired only by the formal acceptance prescribed in the act. These agencies co-operated in developing the act, and their views are entitled to great weight in its interpretation. *Cf. Bowen v. Johnston*, 306 U.S. 19, 29, 30, 83 L. ed. 455, 462, 463, 59 S. Ct. 442. Besides, we can think of no other rational meaning for the phrase 'jurisdiction, exclusive or partial' than that which the administrative construction gives it.

"Since the government had not accepted jurisdiction in the manner required by the Act, the federal court had no jurisdiction of this proceeding. In this view it is immaterial that Louisiana statutes authorized the government to take jurisdiction, since at the critical time the jurisdiction had not been taken."

We are now confronted with the question whether the State of North

Carolina by G.S. 104-7 has relinquished sovereignty over the land here acquired by the United States Government on 31 May 1958, on which Rosebay Court apartment, the situs of the crime, is situate, to the extent that the State has no jurisdiction to try the defendant on the indictment here, when the United States Government has not accepted jurisdiction over this area.

The question involved relates to the basic questions of state sovereignty and the cession of sovereign jurisdiction. This is not a controversy between the State and Federal governments over jurisdiction. In essence it is a conflict between the State of North Carolina and one of its residents or citizens, who asserts an immunity from trial in the State Court, asserting that exclusive jurisdiction to try him for the offense charged in the indictment is vested in the Federal Court. It is the positive duty of the State towards its citizens to survive and to survive without unnecessary diminution of its powers. In *Ryan v. State,* 188 Wash. 115, 130, 61 P. 2d 1276, 1283, the question was the interpretation of the ceding Act adopted by the Washington State Legislature relative to the Grand Coulee project. In that case the Court said: "But, since self-preservation is the first law of nations and states, as well as of individuals, it will not be presumed, in the absence of clearly expressed intent, that the State has relinquished its sovereignty."

The Supreme Court of Montana said in *Valley County v. Thomas,* 109 Mont. 345, 374, 97 P. 2d 345, 360: "A ceding Act must not be so construed as to make possible a no-man's land within the boundaries of the state."

In *United States v. Unzeuta,* 281 U.S. 138, 74 L. Ed. 761, the Court said: "No sovereign power which the community has an interest in preserving undiminished will be held to be surrendered, unless the intention to surrender is manifested by words too plain to be mistaken."

This is said in *Haggar Co. v. Helvering,* 308 U.S. 389, 84 L. Ed. 340: "All statutes must be construed in the light of their purpose. A literal reading of them which would lead to absurd results is to be avoided when they can be given a reasonable application consistent with their words and with the legislative purpose."

This Court said in *S. v. Barksdale,* 181 N.C. 621, 107 S.E. 505: ". . . It is further and fully established that where a literal interpretation of the language of a statute will lead to absurd results, or contravene the manifest purpose of the Legislature, as otherwise expressed, the reason and purpose of the law shall control and the strict letter thereof shall be disregarded."

In *Atkinson v. State Tax Commission of Oregon,* 303 U.S. 20,

82 L. Ed. 621, the Court on appeal from the Supreme Court of Oregon quoted with approval this language of the State Court: "The mere fact that there may be on the statute books of the state a general law, such as section 60-1303, Oregon Code 1930, consenting to the purchase of land by the United States and granting to the national government the right to exercise exclusive jurisdiction thereover, does not imply that over all lands purchased by the national government in the state after the enactment of such law the state is divested *ipso facto* of sovereignty, and exclusive control over the acquired area is assumed by the federal government." In that case, the exclusive jurisdiction had been offered by the State but not assumed. The Supreme Court of the United States further on in this opinion states: "If, however, exclusive jurisdiction, although offered, was not accepted by the United States, there is no warrant for the conclusion that the State did not retain its territorial jurisdiction over the area in question so far as its exercise involved no interference with the carrying out of the federal project."

G.S. 104-7 cedes exclusive jurisdiction to the United States over the land acquired by the United States Government on 31 May 1958, on which land Rosebay Court apartment is situate, but the statute and the State of North Carolina cannot compel the United States to accept such jurisdiction over this area, and it has not done so. The only reasonable interpretation and application of G.S. 104-7, consistent with its words and legislative purpose, when the United States Government has not accepted the exclusive jurisdiction over the area ceded by the statute, is that the statute is not applicable and the State retains "its territorial jurisdiction over the area in question so far as its exercise involved no interference with the carrying out of the federal project," and the trial, conviction and judgment imposed upon defendant by the State Court for the felony of assault with intent to commit rape upon Emma Estelle Harrison is no such interference. To hold that G.S. 104-7 has divested the State Court of jurisdiction in this case, when the United States has not accepted jurisdiction, as it has the power to do, would create a no-man's land within the boundaries of Craven County, in which area persons could commit crimes with immunity, because neither the Federal nor State Courts would have any jurisdiction to try them for their crimes committed within this area. Such an interpretation of the statute would be absurd and ridiculous, and inimical to the public welfare. The State Court had jurisdiction to try defendant on the indictment here, and upon his conviction to impose imprisonment upon him.

Defendant in his petition under our Post-Conviction Hearing Act to review the constitutionality of his trial alleged that his constitution-

al right had been violated because the State withheld or failed to disclose evidence which it had favorable to him. When this proceeding was heard by Judge Morris, he found as a fact that this contention of defendant was *without foundation or merit.* When the proceeding came on to be heard before Judge Cowper, defendant through his counsel advised Judge Cowper that he is not now pursuing such contention, but was relying upon his contention that the State Court had no jurisdiction. Judge Cowper concluded as a matter of law "that the petitioning defendant having advised the court through counsel that he is no longer pursuing the contention of denial of his constitutional rights on the grounds of evidence being withheld by the State, and no evidence having been offered of same, said defense is deemed to [be] waived and abandoned."

Parties cannot try their cases or proceedings piecemeal. There must be an end of litigation, and where a party has an opportunity to present his case or his defense, and neglects to do so, the law requires that he take the consequences. The law with us is well settled that "a judgment is *res judicata* and bars a subsequent action between the same parties as to all matters actually litigated and determined therein and also as to all matters which properly could have been litigated and determined." Strong's N. C. Index, Vol. 3, Judgments, p. 48, where many of our cases are cited.

The findings of fact support the conclusions of law and the judgment, therefore, the order of Judge Cowper below is

Affirmed.