STATE, Appellant v. Johnson, Respondent

(130 N.W.2d 106)

(File No. 10126. Opinion filed August 28, 1964)

Frank L. Farrar, Atty. Gen., Alan Williamson, Asst. Atty. Gen., Pierre, Robert C. Bakewell, Jr., State's Atty., Custer, for plaintiff and appellant.

Norman K. Blatchford, Hot Springs, for defendant and respondent.

ROBERTS, J. Defendant was charged by an information with the crime of operating a motor vehicle while under the influence of alcoholic liquor alleged to have been committed on June 26, 1963, on U. S. Highway 385 in Wind Cave National Park. Defendant maintains that the state courts have no jurisdiction since the Park was at the time of the commission of the alleged offense within the federal criminal jurisdiction. From a judgment setting aside the information and dismissing the action, the state appeals.

A tract of public land lying within Custer County, South Dakota, was withdrawn from settlement and set apart as Wind Cave National Park by an Act of Congress approved January 9, 1903, 16 U.S.C.A. § 141. Additional lands within the same county were included and made a part of the Park by an Act of Congress approved August 9, 1946, 16 U.S.C.A. § 141a. These acts did not purport to consent to the acquisition by the United States of exclusive jurisdiction over the Park.

General statutory provisions, Chapter 95, Laws 1891 and Chapter 129, Laws 1895, consenting to the purchase or condemnation of land within this State by the United States and granting to it the right to exercise jurisdiction thereover, were in effect prior to the establishment of the Park. These provisions were subsequently codified and apply to acquisitions by purchase or condemnation. Chap. 1, Rev.Pol.Code of 1903; Sections 5049-5051, Rev.Code 1919; Section 55.0102, South Dakota Code of 1939. Another statute, Chap. 373, Laws 1917, ceded criminal jurisdiction to the United States within Wind Cave National Park on condition that the United States by Act of Congress accept jurisdiction. This statute became Section 5058, Rev.Code of 1919, without material change. The language of that section relating to acceptance by Act of Congress was deleted in the 1939 revision. SDC 55.0107 provides: "Jurisdiction of the lands and their appurtenances which have been or may be acquired by the United States through donations * * * or which may have been acquired by exchange, purchase, or condemnation by the United States for use of * * * Wind Cave National Park * * * is hereby ceded to the United States and all such prior grants or donations of this state are hereby confirmed * * *."

Since 1940, the Congress has provided a definite method of accepting jurisdiction on behalf of the United States. An Act of Congress approved October 9, 1940, 40 U.S.C.A. § 255, provides in part as follows:

"Notwithstanding any other provision of law, the obtaining of exclusive jurisdiction in the United States over lands or interests therein which have been or shall hereafter be acquired by it shall not be required; but the head or other authorized officer of any department or independent establishment or agency of the Government may, in such cases and at such times as he may deem desirable, accept or secure from the State in which any lands or interests therein under his immediate jurisdiction, custody, or control are situated, consent to or cession of such jurisdiction, exclusive or partial, not theretofore obtained, over any such lands or interests as he may deem desirable and indicate acceptance of such jurisdiction on behalf of the United States by filing a notice of such acceptance with the Governor of such State or in such other manner as may be prescribed by the laws of the State where such lands are situated. Unless and until the United States has accepted jurisdiction over lands hereafter to be acquired as aforesaid, it shall be conclusively presumed that no such jurisdiction has been accepted."

 The Supreme Court of the United States has said that a transfer of jurisdiction rests upon a grant by the state and an acceptance by the United States. There is no constitutional principle "which compels acceptance by the United States of an exclusive jurisdiction contrary to its own conception of its interests". Silas Mason Co. v. Tax Commission of Washington, 302 U.S. 186, 58 S.Ct. 233, 82 L.Ed. 187. The fact that there is an outstanding grant to the United States of the right to exercise exclusive jurisdiction does not divest a state of jurisdiction. It retains jurisdiction until there is an acceptance. James v. Dravo Contracting Co., 302 U.S. 134, 58 S.Ct. 208, 82 L.Ed. 155; Atkinson v. State Tax Commission of Oregon, 303 U.S. 20, 58 S.Ct. 419, 82 L.Ed. 621; Collins v. Yosemite Park & Curry Co., 304 U.S. 518,

58 S.Ct. 1009, 82 L.Ed. 1502; Bowen v. Johnston, 306 U.S. 19, 59 S.Ct. 442, 83 L.Ed. 455; Adams v. United States, 319 U.S. 312, 63 S.Ct. 1122, 87 L.Ed. 1421; 91 C.J.S. United States § 7; 54 Am.Jur., United States, §§ 87, 88.

In Adams v. United States, supra, the three defendants were convicted of an offense committed within the confines of Camp Claiborne, Louisiana, a military camp. The question presented was whether the camp was, at the time of the commission of the crime, within the federal criminal jurisdiction. The court construing the provisions of 40 U.S.C.A. § 255, above quoted, said:

"The legislation followed our decisions in James v. Dravo Contracting Co., 302 U.S. 134, 58 S.Ct. 208, 82 L.Ed. 155, 114 A.L.R. 318; [Silas] Mason Co. v. Tax Commission, 302 U.S. 186, 58 S.Ct. 233, 82 L.Ed. 187; and Collins v. Yosemite Park [& C.] Co., 304 U.S. 518, 58 S.Ct. 1009, 82 L.Ed. 1502. These cases arose from controversies concerning the relation of Federal and state powers over government property and had pointed the way to practical adjustments. The bill resulted from a co-operative study by government officials, and was aimed at giving broad discretion to the various agencies in order that they might obtain only the necessary jurisdiction. The Act created a definite method of acceptance of jurisdiction so that all persons could know whether the government had obtained 'no jurisdiction at all, or partial jurisdiction, or exclusive jurisdiction.'

"Both the Judge Advocate General of the Army and the Solicitor of the Department of Agriculture have construed the 1940 Act as requiring that notice of acceptance be filed if the government is to obtain concurrent jurisdiction. The Department of Justice has abandoned the view of jurisdiction which prompted the institution of this proceeding, and now advises us of its view that concurrent jurisdiction can be acquired only by the formal acceptance prescribed in the act. These agencies co-operated in developing the act, and their views are entitled to great weight in its interpretation. Cf. Bowen v.

Johnston, 306 U.S. 19, 29, 30, 59 S.Ct. 442, 83 L.Ed. 455. Besides, we can think of no other rational meaning for the phrase 'jurisdiction, exclusive or partial' than that which the administrative construction gives it.

"Since the government had not accepted jurisdiction in the manner required by the Act, the federal court had no jurisdiction of this proceeding. In this view it is immaterial that Louisiana statutes authorized the government to take jurisdiction, since at the critical time the jurisdiction had not been taken."

The federal government as of June 26, 1963, when the crime here involved was allegedly committed, had not in the manner required by the Act of 1940 or by specific Act of Congress accepted jurisdiction over the area in question and if acceptance need not be explicit there was prior thereto no other legislation from which acceptance could be implied. Yellowstone Park Transp. Co. v. Gallatin County, 9 Cir., 31 F.2d 644; United States v. Johnston, D.C., 58 F.Supp. 208. Defendant argues that since state enactments consenting to acquisition of lands in this state and ceding jurisdiction to the federal government conferred a benefit, acceptance must be presumed and that the attempt of the legislature by the enactment of Chapter 373, Laws 1917, to resume territorial jurisdiction over the Park was ineffectual. SDC 55.0102 and the general statutory provisions of which this section is a reenactment apply to "purchase or condemnation" of land within this state by the United States. The lands in Wind Cave National Park were not acquired by purchase or condemnation as we have indicated. Even if it were assumed that these statutory provisions constituted a tender of jurisdiction, we conclude that there has been no acceptance and that the state retains territorial jurisdiction. In Atkinson v. State Tax Commission of Oregon, supra, decided in 1938, the Supreme Court quoted with approval the following language of the Oregon court: "The mere fact that there may be on the statute books of the state a general law, such as section 60—1303, Oregon Code 1930, consenting to the purchase of land by the United States and granting to the national government the right to exercise exclusive jurisdiction thereover, does not imply that over all lands purchased by the na-

tional government in the state after the enactment of such law the state is divested ipso facto of sovereignty, and exclusive control over the acquired area is assumed by the federal government." The Supreme Court of the United States in its opinion further stated: "If, however, exclusive jurisdiction, although offered, was not accepted by the United States, there is no warrant for the conclusion that the State did not retain its territorial jurisdiction over the area in question so far as its exercise involved no interference with the carrying out of the federal project." A presumption of transfer of jurisdiction when in fact there has been no assumption of jurisdiction by the federal government would cause confusion and make possible a no man's land within the state. Such interpretation of the statutes would be absurd and unreasonable. See Valley County v. Thomas, 109 Mont. 345, 97 P.2d 345; State v. Burell, 256 N.C. 288, 123 S.E.2d 795; People v. Sullivan, Colo., 378 P.2d 633. It follows that the Circuit Court of Custer County has jurisdiction of the prosecution of the crime allegedly committed within the Park.

The judgment below is therefore reversed and the cause remanded with direction to the trial court to proceed to a final disposition of the action.

All the Judges concur.