**UNITED STATES of America ex rel. Rushing GREER, Petitioner-Appellant,**

**v.**

**Frank J. PATE, Warden, Illinois State Penitentiary, Respondent-Appellee.**

**No. 16139.**

United States Court of Appeals
Seventh Circuit.

March 4, 1968.

Rehearing Denied April 17, 1968.

Errett O. Graham, Patrick J. Muldowney, Sidney Z. Karasik, Chicago, Ill., for appellant.

William G. Clark, Atty. Gen., Robert F. Nix, Asst. Atty. Gen., Chicago, Ill., for appellee; John J. O'Toole, Asst. Atty. Gen., of counsel.

Before HASTINGS, Chief Judge, KNOCH, Senior Circuit Judge, and SWYGERT, Circuit Judge.

KNOCH, Senior Circuit Judge.

The relator, Rushing Greer, was tried and convicted of murder in the Criminal Court of Cook County, Illinois. His conviction was affirmed by the Illinois Supreme Court in People v. Greer, 1964, 30 Ill.2d 415, 197 N.E.2d 22.

Relator brought habeas corpus proceedings in the United States District Court against the respondent-appellee, Frank J. Pate, Warden, Illinois State Penitentiary, contending that the crime for which he was convicted occurred in a location under the exclusive jurisdiction of the United States, and further that his Constitutional rights were violated by statements of the prosecutor which constituted a comment on relator's failure to testify at his own trial.

■ The record shows that there is no question as to the precise location in which the crime was committed. There were two eye witnesses. The homicide took place on a loading platform near the Chicago River at least 178 feet from the Main Post Office Building, which is at Van Buren and Canal Streets in the City of Chicago. The land on which the Main Building stands was acquired by the United States in 1931. Relator argues that there was in force at that time an Illinois Statute enacted in 1923 (Ill.Rev.Stats.1951, Ch. 143, §§ 28–31 incl.) which ceded to the United States exclusive jurisdiction over land acquired for the post office, and that the United States alone had jurisdiction to try him for this homicide.

Article I, § 8, Clause 17, United States Constitution, provides a permissive grant for the United States to exercise jurisdiction over lands purchased within a state. Acquisition of title to property does not, however, impose United States' assumption of exclusive jurisdiction without its consent irrespective of State Statutes ceding such jurisdiction. Mason v. Tax Commission of Washington, 1937, 302 U.S. 186, 207, 58 S.Ct. 233, 82 L.Ed. 187.

In February, 1940, Congress amended Title 40 U.S.C. § 255 to provide for a definite method of acceptance of jurisdiction to avoid disputes. Adams v.

United States, 1943, 319 U.S. 312, 314, 63 S.Ct. 1122, 87 L.Ed. 1421. The Act provides:

> Notwithstanding any other provision of law, the obtaining of exclusive jurisdiction in the United States over lands or interests therein which have been or shall hereafter be acquired by it shall not be required; but the head or other authorized officer of any department or independent establishment or agency of the Government may, in such cases and at such times as he may deem desirable, accept or secure from the State in which any lands or interests therein under his immediate jurisdiction, custody, or control are situated, consent to or cession of such jurisdiction, exclusive or partial, not theretofore obtained, over any such lands or interests as he may deem desirable and indicate acceptance of such jurisdiction on behalf of the United States *by filing a notice of such acceptance with the Governor of such State or in such other manner as may be prescribed by the laws of the State where such lands are situated.* Unless and until the United States has accepted jurisdiction over lands hereafter to be acquired as aforesaid, it shall be conclusively presumed that no such jurisdiction has been accepted. R.S. § 355. 40 U.S.C. § 255. [emphasis added]

The relator, considering the entire area as one integrated whole, asserts that the crime took place in the Main Post Office, stating that when relator produced a 1951 deed in the proceedings in the District Court, it was in the mistaken belief that that 1951 deed covered the entire Main Post Office Building and any annexes, despite the legal description therein set out. However, it is uncontroverted that the specific location of the crime was not in the Main Post Office Building itself but in an annex building on a parcel of land acquired by the United States in 1951, long after the above described amendment. At the criminal trial, Howard F. Wilson, Superintendent of the Drafting and Engineering Service of the Chicago Post Office, testified that the place where the crime occurred was not a part of the actual main building but was in a building on a parcel purchased subsequent to the completion of the main building from "the railroad," that it adjoined the main building and was called the post office annex properties. As neither the name of the railroad nor the year of acquisition was mentioned in his testimony, relator argues that the trial record does not make it clear that the 1951 deed from the G. M. & O. Railroad covered the property on which the crime occurred, and that the relator is entitled to the benefit of any doubts generated. However, our review of the entire record leaves us with no doubts as to the time of acquisition of this property.

It is equally uncontroverted that no notice of acceptance of jurisdiction as required by § 255 was ever filed with the State of Illinois.

Relator contends that notice "in such other manner as may be prescribed by the laws of the State where such lands are situated" was provided for by the earlier Illinois statute of 1923 (subsequently repealed in 1953) so that mere recording of a deed placed sole criminal jurisdiction in the United States. We cannot agree with this interpretation which would vitiate the provisions of § 255 by imposing jurisdiction on the United States by the unilateral act of the State. We find much more convincing the argument of the respondent-appellee that the Illinois cession statute was a tender of exclusive jurisdiction which the United States could accept by notice to the Governor pursuant to § 255 or by some other administrative notice procedure which the State might designate (such as notice to the Secretary of State) but which Illinois has not provided. The cession statute in Louisiana which was considered by the Supreme Court in Adams v. United States, 1943, 319 U.S. 312, 315, 65 S.Ct. 1122 was similar to the Illinois statute in ceding exclusive

jurisdiction. That statute and other similar statutes have been held not to place exclusive jurisdiction in the United States absent notice accepting such jurisdiction. State v. Burell, 1962, 256 N.C. 288, 123 S.E.2d 795, 801; People v. Sullivan, 1963, 151 Colo. 434, 378 P. 2d 633, 637. In Kurck v. State of Arkansas, 1962, 235 Ark. 688, 362 S.W.2d 713, 716, a declaration of taking filed by the federal government was held insufficient to vest jurisdiction in the United States because it preceded a tender of jurisdiction by the State.

Relator asserts that the federal government signified a de facto acceptance in that the premises are policed exclusively by federal guards and officers. That assertion is not supported by the record which shows that a Chicago police officer on duty assignment in the post office premises for the midnight to 8:00 a. m. shift was summoned and made the arrest in this case.

We hold that the relator was properly tried by the State of Illinois.

In his opening statement, the prosecutor said:

> * * * the evidence will show to you beyond a shadow of a doubt that Rushing Greer left the post office, that he went home, got a gun, came back; about two hours later after he originally left, he came into the building in a manner in which the evidence, unless he reveals it, cannot be accounted for, because the next thing that anyone there knew, he was standing point-blank firing at the deceased,
> * * *

and in summation to the jury, stated:

> You know, ladies and gentlemen, this in substance is the evidence. It has taken a short time to present it. You have heard nothing, no justification, no excuse, nothing to mitigate, relieve or excuse this vicious premeditated killing.

Relator contends that these were references to his failure to testify and violated the self-incrimination clause of the Fifth Amendment. Relator relies on Griffin v. State of California, 1965, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106, which reversed a California conviction on the ground of prosecutorial comment to the jury on the defendant's failure to testify in his own behalf, although in California at that time such comment was permitted. Relator feels that this case presents a more flagrant violation because in Illinois such comment is prohibited by State law.

Relator concedes that in Tehan v. United States ex rel. Shott, 1966, 382 U.S. 406, 86 S.Ct. 459, 15 L.Ed.2d 453 the Supreme Court held the Griffin rule not to be retrospective, but he argues that Griffin should be prospective in effect only where comment on an accused's failure to testify was permitted prior to Griffin and not in states like Illinois where no serious disruptive consequences would ensue from retrospective application. We do not agree.

We do not reach the question of whether the quoted statements were such as to violate the relator's Constitutional privileges under the Griffin rule. His conviction occurred in 1961. Griffin was decided in 1965. In 1966 Shott limited Griffin to prospective application. On a petition for writ of habeas corpus we will consider violations solely of the federal Constitution and not alleged violations of the Illinois Criminal Code. McCoy v. Tucker, 4 Cir., 1958, 259 F.2d 714, 716; Title 28 U.S.C. § 2241(c) (3).

The professional skill and dedication exhibited by Mr. Sidney Z. Karasik, Mr. Errett O. Graham and Mr. Patrick J. Muldowney of the Illinois bar in representing the relator-appellant as Court-appointed counsel are much appreciated by this Court.

The decision of the District Court is affirmed.

Affirmed.