**Ronnie HANKINS, a/k/a Cecil Hankins, Movant–Appellant,**

v.

**STATE of Missouri, Respondent.**

No. 15638.

Missouri Court of Appeals,
Southern District,
Division Two.

March 13, 1989.

Charles E. Brown, Gainesville, for movant-appellant.

William L. Webster, Atty. Gen., William J. Swift, Asst. Atty. Gen., Jefferson City, for respondent.

MAUS, Judge.

A jury found the movant guilty of capital murder, § 565.001, RSMo 1978. He was sentenced to imprisonment for life without eligibility for probation or parole for 50 years. His conviction was affirmed on appeal. *State v. Hankins,* 642 S.W.2d 606 (Mo.1982). Following an evidentiary hearing, his often amended motion for post-conviction relief was denied.[1]

Movant's brief on his appeal from that denial contained eleven purported "points relied on". Ten of those purported points were by this court for good cause stricken from the brief.

By his remaining point, the movant contends the motion court erred because the Circuit Court of Christian County did not have jurisdiction of the case because the homicide occurred in the Mark Twain National Forest.[2]

The movant argues that his point is established by the following statutes:

The consent of the state of Missouri is given in accordance with the seventeenth clause, eighth section of the first article of the Constitution of the United States to the acquisition by the United States by

---

**1.** Movant's sentence was pronounced before and his motion under Rule 27.26 was pending on January 1, 1988. Post-conviction relief is governed by the provisions of former Rule 27.26.

**2.** The information alleged the homicide occurred in Christian County and was filed in the circuit court of that county. Upon a change of venue the case was tried in Douglas County.

purchase or grant of any land in this state acquired for the purpose of establishing and maintaining post offices, internal revenue and other government offices, hospitals, sanatoriums, fish hatcheries, and land for reforestation, recreational and agricultural uses. Land used exclusively for the erection of hospitals by the United States may also be acquired by condemnation.

§ 12.010, RSMo, 1986.

The jurisdiction of the state of Missouri in and over all land acquired as provided in section 12.010 is granted and ceded to the United States so long as the United States owns the land; except that there *is reserved to the state of Missouri, unimpaired, full authority to serve and execute all process, civil and criminal, issued under the authority of the state within the lands or the buildings.*

§ 12.020, RSMo 1986 (emphasis added).

The state argues that even if the movant established the homicide occurred in a national forest, which it disputes, the state had jurisdiction because of the emphasized reservation in § 12.020. That phrase has an historical background and its meaning is far from clear. Cf. *Humble Pipe Line Co. v. Waggonner*, 376 U.S. 369, 84 S.Ct. 857, 11 L.Ed.2d 782 (1964); *Atkinson v. State Tax Commission of Oregon*, 303 U.S. 20, 58 S.Ct. 419, 82 L.Ed. 621 (1938); *DeKalb County, Georgia v. Henry C. Beck Company*, 382 F.2d 992 (5th Cir.1967); *Rogers v. Squier*, 157 F.2d 948 (9th Cir.1946); *United States v. Heard*, 270 F.Supp. 198 (W.D.Mo.1967); *State v. Cline*, 322 P.2d 208 (Okl.Cr.App.1958). However, it is not necessary for the disposition of this case to further consider the scope of that reservation.

The jurisdiction of the United States in respect to lands it acquires pivots around the following constitutional clause.

To exercise exclusive Legislation in all Cases whatsoever, over such District (not exceeding ten Miles square) as may, by Cession of particular States, and the Acceptance of Congress, become the Seat of Government of the United States, and to exercise like Authority over all Places purchased by the Consent of the Legislature of the State in which the Same shall be, for the Erection of Forts, Magazines, Arsenals, dock-Yards, and other needful Buildings.

U.S. Const. Article 1, § 8. The purposes included in that clause do not include a national forest. *Collins v. Yosemite Park & Curry Co.*, 304 U.S. 518, 58 S.Ct. 1009, 82 L.Ed. 1502 (1938). However, the United States can acquire lands for other purposes. A state may cede jurisdiction over such lands to the United States. *Paul v. United States*, 371 U.S. 245, 83 S.Ct. 426, 9 L.Ed.2d 292 (1963). A state may also cede to the United States jurisdiction over lands acquired for purposes set forth in the foregoing clause of Article 1, § 8, but without the consent of the state. *Paul v. United States*, supra. "In either event—whether the land is acquired by purchase or condemnation on the one hand or by cession on the other—a State may condition its 'consent' upon its retention of jurisdiction over the lands consistent with the federal use." *Paul v. United States*, supra, 371 U.S. at 264–265, 83 S.Ct. at 438, 9 L.Ed.2d at 305. Also see *DeKalb County, Georgia v. Henry C. Beck Company*, supra; *United States v. Heard*, supra.

The United States is not compelled to accept the cession of exclusive or qualified jurisdiction.

As such a transfer rests upon a grant by the State, through consent or cession, it follows, in accordance with familiar principles applicable to grants, that the grant may be accepted or declined. Acceptance may be presumed in the absence of evidence of a contrary intent, but we know of no constitutional principle which compels acceptance by the United States of an exclusive jurisdiction contrary to its own conception of its interests. The mere fact that the Government needs title to property within the boundaries of a State, which may be acquired irrespective of the consent of the State (*Kohl v. United States*, 91 U.S. 367, 371, 372, 23 L.Ed. 449, 451), does not necessitate the assumption by the Government of the

burdens incident to an exclusive jurisdiction. We have frequently said that our system of government is a practical adjustment by which the national authority may be maintained in its full scope without unnecessary loss of local efficiency. In acquiring property, the Federal function in view may be performed without disturbing the local administration in matters which may still appropriately pertain to state authority.

*Silas Mason Co. v. Tax Commission of Washington,* 302 U.S. 186, 207–208, 58. S.Ct. 233, 244, 82 L.Ed. 187, 202 (1937). Before 1940, whether or not the United States accepted the cession of jurisdiction was a question of fact. *Adams v. United States,* 319 U.S. 312, 63 S.Ct. 1122, 87 L.Ed. 1421 (1943). For cases discussing evidence relevant to that question see *Atkinson v. State Tax Commission of Oregon,* supra; *United States ex rel. Greer v. Pate,* 393 F.2d 44 (7th Cir.1968), cert. denied, 393 U.S. 890, 89 S.Ct. 209, 21 L.Ed.2d 168 (1968). In the absence of evidence to the contrary, it was held that acceptance was presumed. *United States v. Heard,* supra.

However, an applicable statute of the United States provides as follows:

The jurisdiction, both civil and criminal, over persons within such forest reservations [national forests] shall not be affected or changed by reason of the existence of such reservations [national forests], except so far as the punishment of offenses against the United States therein is concerned; the intent and meaning, of this provision being that the State wherein any such reservation [national forest] is situated shall not, by reason of the establishment thereof, lose its jurisdiction, nor the inhabitants thereof their rights and privileges as citizens, or be absolved from their duties as citizens of the State.

16 U.S.C.S. § 480. This statute has been held to establish the refusal of the United States to accept exclusive jurisdiction over a national forest. *State v. Cline,* supra. However, in view of the facts of this case, the propriety of the decision of the trial court need not rest on that basis.

In 1940, 40 U.S.C.S. § 255 was amended to add the following:

Notwithstanding any other provision of law, the obtaining of exclusive jurisdiction in the United States over lands or interests therein which have been or shall hereafter be acquired by it shall not be required; but the head or other authorized officer of any department or independent establishment or agency of the Government may, in such cases and at such times as he may deem desirable, accept or secure from the State in which any lands or interests therein under his immediate jurisdiction, custody, or control are situated, consent to or cession of such jurisdiction, exclusive or partial, not theretofore obtained, over any such lands or interests as he may deem desirable and indicate acceptance of such jurisdiction on behalf of the United States by filing a notice of such acceptance with the Governor of such State or in such manner as may be prescribed by the laws of the State where such lands are situated. *Unless and until the United States has accepted jurisdiction over lands hereafter to be acquired as aforesaid, it shall be acquired as aforesaid, it shall be conclusively presumed that no such jurisdiction has been accepted.*

40 U.S.C.S. § 255 (emphasis added). The effect of that provision is clear. "Since the government had not given the notice required by the 1940 Act, it clearly did not have either 'exclusive or partial' jurisdiction over the camp area." *Adams v. United States,* supra, 319 U.S. at 313–314, 63 S.Ct. at 1123, 87 L.Ed. at 1423. In so holding the court made the following observation: "Since the government had not accepted jurisdiction in the manner required by the Act, the federal court had no jurisdiction of this proceeding. In this view it is immaterial that Louisiana statutes authorized the government to take jurisdiction, since at the critical time the jurisdiction had not been taken." *Id.* 319 U.S. at 315, 63 S.Ct. at 1123–1124, 87 L.Ed. at 1423. Also see *United States ex rel. Greer v. Pate,* supra.

If the United States does not accept tendered jurisdiction, that jurisdiction remains in the state. "If, however, exclusive juris-

diction, although offered, was not accepted by the United States, there is no warrant for the conclusion that the state did not retain its territorial jurisdiction over the area in question so far as its exercise involved no interference with the carrying out of the federal project." *Atkinson v. State Tax Commission of Oregon,* supra, 303 U.S. at 25, 58 S.Ct. at 421, 82 L.Ed. at 625. Also see *Paul v. United States,* supra; *State v. Cline,* supra; *State v. Johnson,* 81 S.D. 20, 130 N.W.2d 106 (1964), 77 Am.Jur.2d United States § 81 (1975).

The movant had the burden of proof to establish his asserted grounds for relief. Rule 27.26(f); *McClure v. State,* 470 S.W.2d 548 (Mo.1971). "Absent an affirmative act by the United States, the state is presumed to have jurisdiction over the federal lands." *State v. Rodriguez,* 279 S.C. 106, 302 S.E.2d 666, 667 (1983). The movant did not establish that portion of the national forest in question was acquired by the United States before 1940. He did not establish that the United States had accepted a tendered cession of jurisdiction. He did not sustain his burden of proof. The motion court did not err and the judgment is affirmed.

FLANIGAN, P.J., and HOGAN, J., concur.

Niewald, Waldeck, Norris & Brown, P.C., Raymond L. Dahlberg, Kansas City, for appellants.

McDowell, Rice & Smith, Chartered, Joe W. Coleman, Michelle M. Suter, Field, Gentry, Benjamin & Robertson, Jack Robertson, Kansas City, for respondents.

Before LOWENSTEIN, P.J., TURNAGE, J., and COVINGTON, Special Judge.