**John E. LINDBERG, Jr., Appellant,**

v.

**Edward J. BRENNER, Commissioner of Patents, Appellee.**

**No. 21530.**

United States Court of Appeals District of Columbia Circuit.

Argued April 22, 1968.

Decided July 23, 1968.

---

Mr. Jay M. Cantor, Washington, D. C., and Mr. Robert E. Wickersham, San Francisco, Cal., of the bar of the Supreme Court of California, pro hac vice, by special leave of court, for appellant.

Mr. Jack E. Armore, Washington, D. C., Atty., with whom Mr. Joseph Schimmel, Solicitor, was on the brief, for appellee.

Before BASTIAN, Senior Circuit Judge, and LEVENTHAL and ROBINSON, Circuit Judges.

BASTIAN, Senior Circuit Judge:

This case reaches this court upon the appeal of a grant by the District Court of the Commissioner of Patent's motion for summary judgment. The facts are as follows:

Appellant Lindberg, on August 11, 1964, filed a patent application entitled "Nose-Cone Cooling of Space Vehicle," which was finally rejected on March 30, 1966, by a patent examiner as unpatentable over prior art. Appeal was taken to the Board of Appeals of the Patent Office on June 29, 1966, resulting in affirmance of the rejection. This decision was mailed to appellant on February 28, 1967. A petition for reconsideration was lodged on March 29, 1967, and on April 18, 1967, the Board adhered to its decision.

The Board of Appeals which considered appellant's appeal consisted of an examiner-in-chief and two acting examiners-in-chief, one of the latter being the Director of Patent Classification, in a salary grade corresponding to a primary examiner, and the other a Supervisory Patent Classifier, in a salary grade higher than that of a primary examiner. This composition of the Board of Appeals is the nub of this action.

On May 1, 1967, over two months after first learning of the constitution of the Board, appellant petitioned the Commissioner of Patents to quash the decision of the Board of Appeals and to reconstitute the Board according to appellant's reading of 35 U.S.C. § 7. Denial of the petition to quash was followed by the present proceeding in the District Court seeking to mandamus the Commissioner of Patents to vacate the decision of the Board of Appeals on the ground that the Board was improperly constituted and to empanel a properly constituted Board of Appeals. A motion for summary judgment was filed by the defendant Commissioner, and the plaintiff filed a cross motion for summary judgment. After argument, the Commissioner's motion was granted, that of plaintiff was denied, and this appeal followed.

The correct interpretation of Title 35 United States Code § 3 and § 7[1] is

---

1. [§ 3] *Officers and employees*
   A Commissioner of Patents, one first assistant commissioner, two assistant commissioners, and not more than fifteen examiners-in-chief, shall be appointed by the President, by and with the advice and

the pivotal issue before this court. More specifically, the controversy swirls around two sentences of § 7.[2] Appellant's argument is several-fold. At the outset, he contends that §§ 3 and 7 must be read together since § 3 demonstrates that the Board of Appeals was created by statute to be a quasi-judicial board independent of the Commissioner of Patents. This, according to appellant, is why the statute provides for the fifteen examiners-in-chief to be appointed by the President with the advice and consent of the Senate. Building upon this argument, appellant then contends that the second paragraph of § 7 must not be read in such a way as to defeat the intent of Congress. By his reading then, the sentence "[n]ot more than one such primary examiner shall be a member of the Board of Appeals hearing an appeal" means that every panel (the practice of the Board of Appeals is to sit in panels of three) must have at least two examiners-in-chief (presidentially appointed and Senate confirmed) and not more than one designated examiner. Appellee, in rebuttal, urges the correct reading of § 7[3] to be that, while a Board of Appeals can be comprised of only one designated examiner of a primary grade, it may contain another designated examiner of a salary grade higher than primary.

Appellant's argument is ingenious and, seemingly, pieces of legislative history support his ingenuity. The logic is convincing, however, only by assuming one accepts appellant's initial premise

consent of the Senate. The assistant commissioners shall perform the duties pertaining to the office of commissioner assigned to them by the Commissioner. The first assistant commissioner, or, in the event of a vacancy in that office, the assistant commissioner senior in date of appointment, shall fill the office of Commissioner during a vacancy in that office until a Commissioner is appointed and takes office. The Secretary of Commerce, upon the nomination of the Commissioner in accordance with law, shall appoint all other officers and employees.

The Secretary of Commerce may vest in himself the functions of the Patent Office and its officers and employees specified in this title and may from time to time authorize their performance by any other officer or employee. The Secretary of Commerce is authorized to fix the per annum rate of basic compensation of each examiner-in-chief in the Patent Office at not in excess of the maximum scheduled rate provided for positions in grade 17 of the General Schedule of the Classification Act of 1949, as amended.

[§ 7]  *Board of Appeals*

The examiners-in-chief shall be persons of competent legal knowledge and scientific ability. The Commissioner, the assistant commissioners, and the examiners-in-chief shall constitute a Board of Appeals, which, on written appeal of the applicant, shall review adverse decisions of examiners upon applications for patents. Each appeal shall be heard by at least three members of the Board of Appeals, the members hearing such appeal to be designated by the Commis-

sioner. The Board of Appeals has sole power to grant rehearings.

Whenever the Commissioner considers it necessary to maintain the work of the Board of Appeals current, *he may designate any patent examiner of the primary examiner grade or higher*, having the requisite ability, to serve as examiner-in-chief for periods not exceeding six months each. An examiner so designated shall be qualified to act as a member of the Board of Appeals. *Not more than one such primary examiner shall be a member of the Board of Appeals hearing an appeal.* The Secretary of Commerce is authorized to fix the per annum rate of basic compensation of each designated examiner-in-chief in the Patent Office at not in excess of the maximum scheduled rate provided for positions in grade 16 of the General Schedule of the Classification Act of 1949, as amended. The per annum rate of basic compensation of each designated examiner-in-chief shall be adjusted, at the close of the period for which he was designated to act as examiner-in-chief, to the per annum rate of basic compensation which he would have been receiving at the close of such period if such designation had not been made.  [Emphasis added.]

2.  See the italicized portions of the statute, *supra* note 1.

3.  Appellee contends also that § 3 is not relevant and should not be considered in conjunction with § 7. We do not pause at this contention for it does not affect appellee's principal argument.

that Congress intended the Patent Office Board of Appeals to be independent of the Commissioner of Patents. Whatever may have been the intent of Congress, a reading of *both* paragraphs of § 7 plainly indicates otherwise.

According to the statute, the Commissioner of Patents, the assistant commissioners, and the examiners-in-chief comprise the Board of Appeals.[4] Further, the Commissioner of Patents has statutory power to designate which three examiners-in-chief shall constitute any given panel. Moreover, he is not restricted to the fifteen examiners-in-chief. He may name himself or one or more of the assistant commissioners to a panel, for the language of the statute is explicit: "The Commissioner, the assistant commissioners, and the examiners-in-chief *shall constitute a Board of Appeals * * *.*" [Emphasis added.]

Against the background of the first paragraph, the second paragraph of § 7 assumes a meaning different from the one ascribed to it by appellant. If § 7 gives to the Commissioner of Patents the power that we understand it does, then it is difficult to read the restriction to "one such primary examiner" more narrowly than does the Patent Office. If the Commissioner of Patents can place himself and/or the assistant commissioners on the Board of Appeals, then he is not precluded from designating a temporary examiner-in-chief of a primary salary grade and another temporary examiner-in-chief of a salary grade higher than primary.

Thus we are faced with a situation where the two sections of the Code, on their face, plainly read in one direction and legislative history is claimed to indicate a divergent congressional intent. The legislative history, while in some respects favoring appellant, is not so definite and unequivocal as to cause us to demur from application of the meaning that one would, on balance, assign to the statute without consideration of the legislative history. While we believe the ultimate solution rests with Congress, it is for us to adjudge the present litigation as the law now reads. Congress has the power to change the section if it sees fit.

■ We believe that appellee properly invokes the rule set forth in, *e. g.* Bate Refrigerating Co. v. Sulzberger, 157 U.S. 1, 15 S.Ct. 508, 39 L.Ed. 601 (1894), that "if there be reasonable ground for adopting either of two constructions, this court, without departing from sound principle, may well adopt that construction which is in harmony with the settled practice of the executive branch of the government * * *." 157 U.S. at 34, 15 S.Ct. at 515. When statutes are susceptible of different readings it is practically axiomatic that "administrative interpretation, practice and usage is accorded great weight as an extrinsic aid in the interpretation of statutes by the courts." 3 SUTHERLAND, STATUTORY CONSTRUCTION § 6605 (3d Ed. 1943); Helvering v. Winmill, 305 U.S. 79, 59 S.Ct. 45, 83 L.Ed. 52 (1938). Such deference is paid by the courts, especially when the construction placed upon a statute by the administrative agency is contemporaneous with its enactment;[5] the practice is long standing;[6] or the agency suggested the legislation subsequently enacted.[7] The rationale for such

---

4. Since the statutes in question are susceptible, on the face, to a reading other than that propounded by appellant, it follows that Congress may have provided for presidential nomination and Senate confirmation of examiners-in-chief in order to ensure their high caliber and competence rather than their independence of the Commissioner of Patents.

5. Schell v. Fauche, 138 U.S. 562, 11 S.Ct. 376, 34 L.Ed. 1040 (1891); *see also*

Squire v. Capoeman, 351 U.S. 1, 76 S.Ct. 611, 100 L.Ed. 883 (1956).

6. Logan v. Davis, 233 U.S. 613, 34 S.Ct. 685, 58 L.Ed. 1121 (1914).

7. United States v. American Trucking Ass'n, 310 U.S. 534, 60 S.Ct. 1059, 84 L.Ed. 1345 (1940); Adams v. United States, 319 U.S. 312, 63 S.Ct. 1122, 87 L.Ed. 1421 (1943).

decisions is thought to be a presumed congressional acquiescence.[8]

The litigation now before us, presenting as it does the dual image of controverted statutes and a history of Patent Office action closely akin to the above examples,[9] is clearly a situation in which this court should defer to the discretion of the Patent Office.

Affirmed.

---

8. Norwegian Nitrogen Products Co. v. United States, 288 U.S. 294, 53 S.Ct. 350, 77 L.Ed. 796 (1933).

9. The Patent Office has followed the practice it now urges upon us at least

since January 1, 1953, the effective date of the present Title 35, United States Code, on through May 15, 1967, the filing date of the complaint in this present case.