56 CCPA

**Application of Marco PREDA.**

**Patent Appeal No. 8016.**

United States Court of Customs and Patent Appeals.

Oct. 24, 1968.

Wenderoth, Lind & Ponack, A. Ponak, Washington, D. C. (John T. Miller, Washington, D. C., of counsel) for appellant.

Joseph Schimmel, Washington, D. C. (Jack E. Armore, Washington, D. C., of counsel) for the Commissioner of Patents.

Before WORLEY, Chief Judge and RICH, SMITH, ALMOND, and BALDWIN, Judges.

RICH, Judge.

This appeal is from the decision of the Patent Office Board of Appeals affirming the rejection of claims 7 and 8 of application serial No. 269,707, filed April 1, 1963, entitled "Process for Catalytically Producing Carbon Disulphide From Sulphur and Gaseous Hydrocarbons." No claim has been allowed.

The invention relates to a process for producing carbon disulfide from sulfur vapors and a gaseous hydrocarbon using charcoal as a catalyst. The precise invention before the court is defined by the two claims on appeal:

7. A process for producing carbon disulfide from sulfur vapor and gaseous hydrocarbon which comprises reacting the sulfur vapor and gaseous hydrocarbon in contact with charcoal, as a catalyst, at a temperature of about 750°–830°C. and a space velocity of 120–1400.

8. A process according to claim 7 wherein the hydrocarbon is methane.

The sole reference relied on is:

Thacker and Miller, Industrial and Engineering Chemistry, Vol. 36, No. 2, February, 1944, pp. 182–184. [Hereafter "Thacker."]

Thacker discloses the results of investigations conducted to develop catalysts that

would bring about high rates of reaction between methane and sulfur vapors (to produce carbon disulfide) at 700°C. and below. One catalyst found to perform satisfactorily at these temperatures was "activated charcoal."

The sole issue is whether claims 7 and 8 are anticipated by Thacker. In his Answer before the board the examiner stated, inter alia:

All elements of Applicant's invention are disclosed by the reference:

(1) Catalytically reacting methane (a gaseous hydrocarbon) with sulfur vapor at 800°–1000°C. to produce carbon disulfide.

(2) That activated charcoal may be used as the catalyst.

Applicant's process recites the use of "charcoal" as a catalyst. This would include activated charcoal which is merely charcoal which has been heated or otherwise treated to increase its adsorptive power or "activity".

The board affirmed the examiner, saying:

* * * [The] temperature limitation, which is the only limitation presenting a possibility of distinction, in our mind, appears to be met in the discussion in the first column of page 182, and Fig. 1 [of Thacker]. The authors sought low-temperature effectiveness, but their recognition that higher temperatures could be employed with attendant disadvantages appears to be sufficiently explicit.

We see no basis for distinction in the absence of activation, or holding that the application required charcoal that was not active as prepared, or as modified.

One of the relevant portions of column 1 on page 182 of Thacker reads as follows:

De Simo * * * recently patented a catalytic process for converting methane with sulfur vapors into carbon disulfide at 800° to 1000°C.[1]

In this column Thacker also describes the temperatures used in his investigations, i. e., 700°C. and below, as being "much lower than had previously proved feasible * * *." Fig. 1 shows the theoretical conversions, at temperatures of from about 400° to somewhat above 750°C., for the reaction of hydrogen sulfide with methane and for the six reactions of sulfur with methane that the authors considered the most likely to occur under the conditions of their investigations.

Appellant first asserts that the process attributed to De Simo is "unsatisfactory" for commercial operation and that Thacker teaches "in processes for producing carbon disulfide wherein a catalyst is employed, a reaction temperature at or below 700° C. *should* be employed." (Our emphasis.) Appellant has not pointed out in the record any basis for either of these assertions and we have been unable to locate therein any on our own.[2] Moreover, we are only concerned with whether Thacker's *total* disclosure includes the subject matter of the appealed claims; we are not concerned with what he recommends as the *best* process.

We agree with appellant that Figure 1 of Thacker, by itself, does not disclose every limitation in the appealed claims. However, in considering the disclosure of a reference, it is proper to take into account not only specific teachings of the reference but also the inferences which one skilled in the art would reasonably be expected to draw therefrom. In re Shepard, 319 F.2d 194,

---

1. The 800° to 1000°C. temperature range is mentioned in discussions of three other processes disclosed in the same column, but none of these involves the use of sulfur and a hydrocarbon as starting materials.

2. Column 1 of Thacker does contain references to "deterioration of equipment," "high consumption of electrical energy," and "low efficiency of conversion," but none of these references is directed to the process attributed to De Simo.

50 CCPA 1439 (1963). In this regard, we note the above quoted reference in column 1 to "a catalytic process for converting methane with sulfur vapors into carbon disulfide at 800° to 1000°C.," the statement in column 1 that the temperatures used in Thacker's investigations were "much lower than had previously proved feasible for reactions of methane with sulfur," and the recognition in Table I and Figure 1 that methane and sulfur could be reacted at temperatures above those used by Thacker. We are convinced from this that, although Thacker does not expressly state that carbon disulfide could be produced by reacting methane and sulfur in the presence of activated charcoal as a catalyst at temperatures within the range recited in the appealed claims, there would be a recognition of this fact from a consideration of Thacker by one skilled in the art.

Finally, appellant argues that, as used in his specification and as understood by persons skilled in the art of carbon disulfide manufacture, the expression "charcoal" is not generic to "activated charcoal." He refers to the disclosures in Thacker and his own specification which tell of the use of "charcoal" as a *starting material* in the early days of carbon disulfide manufacture, implying that in this context the expression includes only non-activated charcoal. Although it may be that one skilled in the art would consider it economically foolhardy to use activated charcoal as a starting material (a carbon source), it does not follow that he would expect activated charcoal to serve less admirably for this purpose. Additionally, it should be noted that appellant has not used "charcoal" to identify a *starting material,* as in the prior art, but has instead used it to identify a *catalyst.* At least when used in this context, there is no basis for arguing that "charcoal" is not generic to "activated charcoal." We therefore conclude that Thacker does anticipate the appealed claims.

The decision of the board is affirmed.

Affirmed.

SMITH, Judge (concurring).

For my views concerning the legality of a board consisting of two Acting Examiners-in-Chief, such as appears in this record, see In re Wiechert, 370 F.2d 927, 54 CCPA 957 (1967). Since my last consideration of this problem, the Court of Appeals for the District of Columbia has considered the same problem in Lindberg v. Brenner, 399 F.2d 990 (D.C. Cir. 1968). Both the majority opinion of this court in the *Wiechert* case and the opinion of the court in the *Lindberg* case have treated the powers of the Commissioner under 35 U.S.C. § 7 as being limited powers in that a board having Acting Examiners-in-Chief cannot include more than one such examiner of primary grade. The record here discloses the presence of two Acting Examiners-in-Chief on the board but nothing is of record to show that their designation falls within the limitations imposed on the Commissioner by 35 U.S.C. § 7.

I therefore note my grave reservations concerning the legality of the present board, but deem it in the best interest of the court to participate in its decision on the merits. In so doing, I concur in the majority opinion.