MANLEY ET AL., APPELLANTS, *v.* BURKHART, JUDGE, APPELLEE.

[Cite as Manley *v.* Burkhart (1988), 40 Ohio St. 3d 35.]

(No. 87-2122—Submitted August 9, 1988—Decided December 14, 1988.)

*James W. Peters,* for appellants.
*Richard A. Yoss,* prosecuting attorney, for appellee.

*Per Curiam.* A writ of prohibition will issue where the relator shows that the respondent is about to exercise judicial or quasi-judicial power, that the exercise of such power is unauthorized by law, and that no other adequate remedy exists. *Commercial Savings*

*Bank* v. *Wyandot Cty. Court of Common Pleas* (1988), 35 Ohio St. 3d 192, 519 N.E. 2d 647. Appellants contend that the trial court is unauthorized by law to hear this action. We disagree.

Appellants argue that the Court of Common Pleas of Monroe County lacks jurisdiction over this case because the assault took place at the Hannibal Project. According to appellants, the project is within the "special maritime and territorial jurisdiction of the United States," defined in Section 7(3), Title 18, U.S. Code, as including:

"Any * * * place purchased or otherwise acquired by the United States by consent of the legislature of the State in which the same shall be, for the erection of a fort, magazine, arsenal, dockyard, or other needful building."

Appellants argue that Congress alone can legislate for the special maritime and territorial jurisdiction, by virtue of Clause 17, Section 8, Article I of the United States Constitution, which provides:

"The Congress shall have Power * * * [t]o exercise exclusive Legislation in all Cases whatsoever * * * over all Places purchased by the Consent of the Legislature of the State in which the Same shall be, for the Erection of Forts, Magazines, Arsenals, dock-Yards, and other needful Buildings * * *."

Since locks and dams are "needful buildings," *James* v. *Dravo Contracting Co.* (1937), 302 U.S. 134, 142-143, they fall within the special maritime and territorial jurisdiction of the United States if the land they are built on was acquired with the consent of the state within which they lie.

Thus, appellants maintain that, as the Hannibal Project is subject to the "exclusive legislation" of Congress, a state statute cannot regulate conduct there, and the trial of appellants in a state court under R.C. 2903.11 is consequently unauthorized by law.

But Section 255, Title 40, U.S. Code states in part:

"Notwithstanding any other provision of law, the obtaining of exclusive jurisdiction in the United States over lands * * * therein which have been or shall hereafter be acquired by it *shall not be required*; but the head or other authorized officer of any * * * agency of the Government may, in such cases and at such times as he deems desirable, accept or secure from the State in which any lands * * * under his immediate jurisdiction, custody, or control are situated, consent to or cession of such jurisdiction, exclusive or partial, not theretofore obtained, over any such lands * * * and indicate acceptance of such jurisdiction on behalf of the United States by filing a notice of such acceptance with the Governor of such State or in such other manner as may be prescribed by the laws of the State where such lands are situated. Unless and until the United States has accepted jurisdiction over lands hereafter to be acquired as aforesaid, *it shall be conclusively presumed that no such jurisdiction has been accepted.*" (Emphasis added.)

According to appellee, the federal government has never accepted jurisdiction over the Hannibal Project pursuant to this provision; moreover, appellants do not allege otherwise. However, if the land in question was acquired before Section 255 took effect on February 1, 1940, the government is presumed to have accepted exclusive jurisdiction ceded by the state if use of the land conferred a benefit upon the United States. *Ft. Leavenworth RR. Co.* v. *Lowe* (1885), 114 U.S. 525, 528. Appellants have not shown that the land was acquired before February 1,

1940; therefore, we presume that it was not.[1]

Although the Constitution gives Congress exclusive jurisdiction over "Places purchased by Consent of the Legislature * * * for the Erection of * * * needful Buildings," Congress need not accept that jurisdiction. "Acceptance may be presumed in the absence of evidence of a contrary intent, but we know of no constitutional principle which compels acceptance by the United States of an exclusive jurisdiction contrary to its own conception of its interests." *Silas Mason Co.* v. *Tax Comm. of Washington* (1937), 302 U.S. 186, 207. See, also, *James, supra,* at 148; *United States* v. *Gliatta* (C.A. 5, 1978), 580 F. 2d 156, 158. By enacting Section 255, Congress chose not to accept jurisdiction unless the government gives "its affirmative assent to the transfer of exclusive or concurrent jurisdiction * * *." *Gliatta, supra,* at 158.

This requirement of affirmative assent is illustrated by *Adams* v. *United States* (1943), 319 U.S. 312. In *Adams,* the defendants were charged with committing rape within the special maritime and territorial jurisdiction of the United States in violation of federal law. The scene of the crime was Camp Claiborne, Louisiana, a military base acquired by the government after February 1, 1940, over which the government had not accepted jurisdiction. "Since the government had not accepted jurisdiction in the manner required by * * * [Section 255], the federal court had no jurisdiction of this proceeding." *Id.* at 315.

The United States Supreme Court has since held that Congress has police power over federally owned land by virtue of the Property Clause, Clause 2, Section 3, Article IV of the United States Constitution. However, such power is, of course, not exclusive. *Kleppe* v. *New Mexico* (1976), 426 U.S. 529, 543. Hence, while the result in *Adams* would perhaps be different today, that does not vitiate its holding that a state has jurisdiction over federal lands within the special maritime and territorial jurisdiction acquired since February 1, 1940 unless the government takes exclusive jurisdiction under Section 255.

If the government does not accept jurisdiction over a federal enclave, the state retains the jurisdiction it had before the acquisition. "* * * Article I, Section 8, Clause 17 of the United States Constitution provides a power [to take jurisdiction] but does not have the agency to effect the transfer [of jurisdiction]. The Constitution found the jurisdiction in the state and left it there." *Cincinnati* v. *Nussbaum* (C.P. 1968), 14 Ohio Misc. 19, 21-22, 42 O.O. 2d 359, 361, 233 N.E. 2d 152, 154.

Since the government does not automatically have exclusive jurisdiction over land within the special maritime and territorial jurisdiction, Section 255 controls. Under that section, its jurisdiction is not exclusive.

Appellants argue that Section 113, Title 18, U.S. Code specifically grants subject matter jurisdiction to the fed-

---

[1] We note that by R.C. 159.03, the state consents to the federal government's acquisition of land required for "public buildings * * * or for any other purposes of the government" if the land was acquired between May 6, 1902 and March 14, 1980. Although neither party has raised the point, we find nothing in this record to show when the property in question was acquired. In any event, we need not decide this point, since we hold that even if it were within the special maritime and territorial jurisdiction, the federal government's jurisdiction over it was not exclusive.

eral courts over all assaults committed within the special maritime and territorial jurisdiction. Thus, they argue, it preempts state jurisdiction in the field. However, the cases cited by appellants to show that the federal assault statute preempts the state statute are inapposite. All involve prosecutions under the Assimilative Crimes Act ("ACA"), Section 13, Title 18, U.S. Code.[2]

Appellants' preemption argument begs the jurisdictional question. Appellants are charged in an Ohio court under the Ohio Revised Code, not in federal court under the ACA. The question is: May the General Assembly legislate for the project site, or has Congress the exclusive power to do that?

Likewise, Section 3231, Title 18, U.S. Code, cited by appellants, is irrelevant here. That statute grants federal district courts "original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States." Appellants are not charged with violating any law of the United States. The question is whether the laws of the United States apply on the project site to the exclusion of Ohio law.

The record does not show that the government acquired the Hannibal Project site before February 1, 1940. Nor does it show that the government has ever accepted exclusive jurisdiction over the site as required by Section 255. Since neither condition is true, the state retains jurisdiction over the site.

Appellants have not shown that the common pleas court lacks jurisdiction. They are not entitled to prohibition. We affirm the judgment of the court of appeals.

*Judgment affirmed.*

MOYER, C.J., SWEENEY, LOCHER, HOLMES, DOUGLAS, WRIGHT and H. BROWN, JJ., concur.

---

[2] The ACA assimilates state-law crimes into federal law where the offense occurred on federal property within a state; however, if a federal statute forbids the acts constituting the offense, it preempts the ACA, and the state-law crime is not assimilated.