UNITED STATES of America, Plaintiff–Appellee,

v.

Benny R. WICKS, Defendant–Appellant.

No. 96–2465.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 28, 1997.

Decided Dec. 22, 1997.

Norman R. Smith (argued), Office of the United States Attorney, Criminal Division, Fairview Heights, IL, for Plaintiff-Appellee.

Mary Wiggins and Mary Endres, Law Students (argued), Robert J. Palmer, May, Oberfell & Lorber, South Bend, IN, for Defendant-Appellant.

Before CUDAHY, DIANE P. WOOD, and EVANS, Circuit Judges.

DIANE P. WOOD, Circuit Judge.

Benny Wicks, no stranger to the criminal justice system, raises in this appeal a potpourri of challenges to the federal "Three Strikes" statute, 18 U.S.C. § 3559(c), under which Congress has prescribed a mandatory sentence of life imprisonment for certain recidivist "violent felons." Wicks was declared "out" under the statute when he was convicted for violating the federal armed bank robbery statute, 18 U.S.C. § 2113(a), and the statute prohibiting the use of a firearm in relation to a crime of violence, 18 U.S.C. § 924(c). We find that the district court correctly interpreted the statute and that Wicks' constitutional arguments against it are unavailing, and we therefore affirm the judgment of the court below.

## I

On September 23, 1994, Wicks entered the First National Bank of Xenia (Illinois) at 2:07 p.m. Armed with a shotgun and wearing a nylon stocking over his head and face, he approached the tellers and, in the presence of several witnesses and the bank's video surveillance camera, he handed the tellers a canvas bag and demanded that they fill it with money from the cash drawer. The tellers complied, but they also had the presence of mind to sound the alarm and to provide Wicks with both "bait money" (money with recorded serial numbers) and a dye pack (a bundle of money containing a packet of dye that explodes and stains the stolen money

with ink). Wicks fled after receiving the bag of money, but he was arrested on September 29, 1994, with money tainted with pink dye in his possession.

On February 6, 1996, a jury convicted him of one count of armed bank robbery and one count of using a firearm in relation to a crime of violence, in violation of 18 U.S.C. §§ 2113(a) and 924(c), respectively. Before sentencing, as it was required to do in order to trigger the provisions of § 3559(c)(1), the government filed an "Information Charging Prior Offenses For Mandatory Life Imprisonment." See 18 U.S.C. § 3559(c)(4), incorporating by reference the procedures set forth in 21 U.S.C. § 851(a). In that document, it alleged that Wicks had previously been convicted of two serious violent felonies. The first of these was a July 14, 1983, robbery conviction in Marion County, Illinois, for which he received a sentence of 3 years and 110 days, and the second was a February 19, 1992, robbery conviction in Madison County, Illinois, for which he received a sentence of 7 years.

Section 3559(c)(1) is one of a number of federal statutes that imposes harsher sentences on recidivists. See, e.g., 18 U.S.C. § 924(e) (Armed Career Criminal Act); 18 U.S.C. § 3147 (crimes committed while released on bail); 21 U.S.C. § 841(b) (repeat drug offenses). It reads as follows:

(1) Mandatory life imprisonment.—Notwithstanding any other provision of law, a person who is convicted in a court of the United States of a serious violent felony shall be sentenced to life imprisonment if—

(A) the person has been convicted (and those convictions have become final) on separate prior occasions in a court of the United States or of a State of—

(i) 2 or more serious violent felonies; or

(ii) one or more serious violent felonies and one or more serious drug offenses; and

(B) each serious violent felony or serious drug offense used as a basis for sentencing under this subsection, other than the first, was committed after the defendant's conviction of the preceding

serious violent felony or serious drug offense.

The term "serious violent felony," as used in § 3559(c)(1), is defined in § 3559(c)(2)(F) as:

> (i) a Federal or State offense, by whatever designation and wherever committed, consisting of murder (as described in section 1111); manslaughter other than involuntary manslaughter (as described in section 1112); ... robbery (as described in section 2111, 2113, or 2118); ... or attempt, conspiracy, or solicitation to commit any of the above offenses; and
>
> (ii) any other offense punishable by a maximum term of imprisonment of 10 years or more that has as an element the use, attempted use, or threatened use of physical force against the person of another or that, by its nature, involves a substantial risk that physical force against the person of another may be used in the course of committing the offense.

At the June 7, 1996, sentencing hearing, the district court, over Wicks' objection, agreed with the government that both prior robbery convictions qualified as serious violent felonies under § 3559(c)(2)(F)(i) and thus could be counted as two of the necessary three strikes for mandatory life imprisonment (with the bank robbery serving as the third strike). It relied on the fact that 18 U.S.C. § 2113, one of the statutes mentioned in § 3559(c)(2)(F)(i), prohibits bank robberies and associated offenses, and that the state offenses for which Wicks was convicted were essentially the same thing (though not involving a bank). Wicks' prior convictions could not have qualified as serious violent felonies under (F)(ii), because under Illinois law, the maximum term of imprisonment for robbery was only 7 years. See 720 ILCS 5/18–1(b) (identifying robbery as a Class 2 felony); 730 ILCS 5 5–8–1(a)(5) (Class 2 felonies shall receive sentences between 3 and 7 years). The court therefore imposed a mandatory sentence of life imprisonment for Wicks' § 2113(a) conviction, and a "consecutive" 60–month sentence on his § 924(c) conviction.

## II

Wicks argues both that the district court erred in its interpretation of the statutory definition of "serious violent felony," and in the alternative that the Three Strikes law is unconstitutional. We review these arguments *de novo, see United States v. Turner,* 93 F.3d 276, 286 (7th Cir.1996) (constitutional arguments); *United States v. Fife,* 81 F.3d 62, 63 (7th Cir.1996) (statutory interpretation), except insofar as he failed properly to preserve them for appeal. With respect to the latter, our review is only for plain error. See *United States v. Rector,* 111 F.3d 503, 507 (7th Cir.1997).

■ In arguing that the district court misinterpreted the statute, Wicks takes a highly literal approach, under which, in essence, no state offense would ever qualify unless it replicated every word of 18 U.S.C. § 2113. A robbery conviction would qualify, he believes, only if it has exactly the same elements as one of the robberies identified by Congress in § 3559(c)(2)(F)(i). Under this view, in addition to the basic elements of the taking of property from another by the use or threatened use of force, see generally Model Penal Code § 222.1, the offense must have occurred either within the special maritime and territorial jurisdiction of the United States (18 U.S.C. § 2111) or in a bank (18 U.S.C. § 2113), or in connection with drugs in the control of "a person registered with the Drug Enforcement Administration under section 302 of the Controlled Substances Act" (18 U.S.C. § 2118). Since the elements of robbery under Illinois law do not include any of these additional elements, Wicks argues that the district court erred in counting his prior convictions as strikes. See 720 ILCS 5/18–1(a) (defining robbery).

Wicks' approach ignores the wording of the statute and narrows it unduly. Congress did not simply provide a list of federal crimes and indicate that when the states had a precise counterpart the law would be triggered. Instead, it said that serious violent felonies included "Federal or State offense[s], by whatever designation and wherever committed." § 3559(c)(2)(F)(i). It is hard to see why Congress would have used this language, if it had meant that every

detail of the federal offense, including its jurisdictional elements, had to be replicated in the state offense. Section 2111, for example, makes it a crime "within the special maritime and territorial jurisdiction of the United States" to "take or attempt[ ] to take from the person or presence of another" anything of value. No offense currently on the books in any state includes the requirement of occurring "within the special maritime and territorial jurisdiction of the United States"—in all likelihood because federal jurisdiction generally is exclusive in those areas. 18 U.S.C. §§ 7, 3231; cf. 40 U.S.C. § 255 (establishing requirements for federal assumption of jurisdiction); *Adams v. United States,* 319 U.S. 312, 314–15, 63 S.Ct. 1122, 1123–24, 87 L.Ed. 1421 (1943) (no federal jurisdiction absent compliance with § 255); *United States v. Pate,* 393 F.2d 44, 46–47 (7th Cir.1968) (same); *Manley v. Burkhart,* 40 Ohio St.3d 35, 531 N.E.2d 1306, 1308–09 (1988) (same). Robberies of federally insured banks and savings and loan associations, covered by § 2113, might be the subject of concurrent jurisdiction between the federal and state authorities, but it again makes little sense to exclude from the statute's coverage bank robberies from institutions that do not happen to satisfy the jurisdictional criteria of § 2113(f), (g), or (h).

■ In our view, the opening phrase of § 3559(c)(2)(F)(i) indicates that murders, manslaughters (other than those fitting within the definition of involuntary manslaughter provided in 18 U.S.C. § 1112(a)), and robberies, as exemplified by the three statutes listed, no matter what the name and no matter where they occur, count as prior "strikes." The fact that three statutes are used to illustrate the term "robbery" itself supports the interpretation we adopt here: we must look for the common theme among §§ 2111, 2113, and 2118, not the differentiating factors. The Eighth Circuit, without discussing the matter in this much detail, counted a state manslaughter conviction as a "serious violent felony" for the Three Strikes law in *United States v. Dittrich,* 100 F.3d 84, 86 (8th Cir.1996). Our conclusion is therefore consistent with that reached by the only other court to address this issue. We also find nothing in the statute sufficiently ambiguous

to require application of the rule of lenity, for which Wicks has argued here. *See, e.g., United States v. Unthank,* 109 F.3d 1205, 1211 (7th Cir.1997). Both the language of the statute and its legislative history support the proposition that it reaches a broad range of both state and federal crimes. See, *e.g.,* H.R.Rep. No. 463, 103d Cong., 2d Sess.1994 (noting that the first two strikes under the statute "may be for any combination of convictions in courts of the United States or of the States").

For these reasons, we agree with the district court's decision that Wicks' prior convictions for robbery in Illinois qualify as strikes. In Illinois, "[a] person commits robbery when he or she takes property [except in cases involving a motor vehicle, which are covered by a different statute], from the person or presence of another by the use of force or by threatening the imminent use of force." 720 ILCS 5/18–1(a). This definition is consistent with the definition of robbery provided in 18 U.S.C. §§ 2111, 2113, and 2118. Wicks had two strikes against him when he robbed the First National Bank of Xenia; with his conviction for that crime, he had three strikes and a one-way ticket to prison.

### III

Wicks also argues that the Three Strikes law is unconstitutional for four reasons: (1) it violates his due process rights by placing the burden on the defendant to produce evidence negating the imposition of a strike, (2) it violates the equal protection clause and "offends the concept of federalism" because defendants convicted in lenient states will avoid receiving strikes for conduct that will qualify as a strike in other states, (3) the use of prosecutorial discretion in applying the law violates the doctrine of separation of powers and the equal protection clause, and (4) Congress exceeded its powers under the commerce clause in passing the statute. We address each argument in turn.

#### A. Burden of Proof

■ In drafting the statute, Congress chose to exempt certain robberies from the

class of qualifying felonies, by defining a class that does not qualify:

(3) Nonqualifying felonies-

(A) Robbery in certain cases.—Robbery, an attempt, conspiracy or solicitation to commit robbery ... shall not serve as a basis for sentencing under this subsection if the defendant establishes by clear and convincing evidence that-

(i) no firearm or other dangerous weapon was used in the offense and no threat of use of a firearm or other dangerous weapon was involved in the offense; and-

(ii) the offense did not result in death or serious bodily injury (as defined in section 1365) to any person.

18 U.S.C. § 3559(c)(3)(A). Wicks argues that this provision violates his rights under the due process clause because it places the burden of qualifying for this exception, once the government has met its burden of establishing the existence of the prior convictions, on him rather than on the prosecution.

■ Wicks' argument proceeds initially from the mistaken premise that, at the sentencing stage, the due process clause requires the government to prove all matters "beyond a reasonable doubt." The Supreme Court has clearly rejected such a rule, in *McMillan v. Pennsylvania*, 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986), in which it commented that "[s]entencing courts have traditionally heard evidence and found facts without any prescribed burden of proof at all." *Id.* at 91, 106 S.Ct. at 2419; *see also United States v. Watts*, — U.S. —, 117 S.Ct. 633, 136 L.Ed.2d 554 (1997) (sentencing court may consider conduct of which defendant has been acquitted, so long as it has been proven by a preponderance of the evidence). This court has on many occasions noted that ordinary procedural protections do not apply to sentencing proceedings. See, *e.g., United States v. Banks*, 78 F.3d 1190, 1208 (7th Cir.1996) (listing cases), *vacated on other grounds sub nom. Mills v. United States*, — U.S. —, 117 S.Ct. 478, 136 L.Ed.2d 373, *judgment aff'd*, 122 F.3d 346 (7th Cir.1997); *United States v. Neary*, 552 F.2d 1184, 1194 (7th Cir.1977) ("Many procedural protections applicable upon trial of

guilt or innocence do not apply to the determination of sentence after conviction."); see also 18 U.S.C. § 3577 ("No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."). The Three Strikes law operates as a sentence enhancement device, in a manner very much like the persistent felony offender statute the Supreme Court considered in *Parke v. Raley*, 506 U.S. 20, 113 S.Ct. 517, 121 L.Ed.2d 391 (1992), or even the relevant conduct rules of the Sentencing Guidelines addressed in *Witte v. United States*, 515 U.S. 389, 115 S.Ct. 2199, 132 L.Ed.2d 351 (1995). As such, the due process clause requires only that the proceedings be fundamentally fair and the sentence based on accurate and reliable information. *See, e.g., United States v. Salinas*, 62 F.3d 855, 859 (7th Cir.1995); *United States v. Johnson*, 997 F.2d 248, 254 (7th Cir.1993); *United States v. Pless*, 982 F.2d 1118, 1127 (7th Cir.1992); but *see United States ex rel. Villa v. Fairman*, 810 F.2d 715, 718–19 (7th Cir.1987) ("Inaccurate information standing alone does not require resentencing [where the misinformation is not of] ... 'constitutional magnitude' .... ") (*quoting United States v. Tucker*, 404 U.S. 443, 447, 92 S.Ct. 589, 592, 30 L.Ed.2d 592 (1972)).

In *Parke*, the Court concluded that Kentucky was constitutionally entitled to place upon the defendant the burden of proving the invalidity of the prior convictions on which its "persistent felony offender" sentencing regime was based. Because final judgments enjoy a "presumption of regularity," the Court found nothing in the due process clause to prohibit Kentucky's burden-shifting rule. 506 U.S. at 34, 113 S.Ct. at 525–26. Wicks' case is somewhat different, because instead of attacking the validity of a prior conviction, he must argue that certain facts either were or were not involved in the earlier case. Nevertheless, in the end this does not make a difference. *McMillan* upheld a Pennsylvania rule requiring a mandatory minimum sentence of five years' imprisonment if a person "visibly possessed a

firearm" during the commission of an offense, even though the sentencing judge had to find the fact of such visible possession only by a preponderance of the evidence rather than beyond a reasonable doubt. In so doing, the *McMillan* Court relied on the earlier decision in *Patterson v. New York*, 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977), which had upheld a New York statute that imposed upon the defendant the burden of proving at the guilt stage the affirmative defense of extreme emotional disturbance. As long as the prosecution has proved all elements of the crime beyond a reasonable doubt, *Patterson* held, the state is free to allocate the burden of proving an affirmative defense to the defendant. If *Patterson* allows such a result even at the stage of the trial where guilt or innocence is decided, it follows that due process does not prohibit the kind of affirmative defense at the sentencing stage found in § 3559(c)(3)(A). We therefore reject Wicks' due process challenge to the Three Strikes law.

### B. Equal Protection and Federalism

■ Wicks' points here are related: he argues that by counting state convictions as strikes, § 3559 does not apply uniformly to similarly situated defendants convicted in different states. The possibility for disparate treatment is most apparent, he observes, when courts assess strikes under § 3559(c)(2)(F)(ii), because under that section, two defendants convicted of identical crimes in different states could hypothetically be treated quite differently for the Three Strikes law. If State A imposed a maximum term of imprisonment of 12 years for a given offense, while State B capped the imprisonment term for the same offense at 8 years, the defendant with a prior conviction from State A would receive a strike under the federal law, while a defendant with a prior conviction from State B would not.

■ Not least among Wicks' problems in raising this point is his failure to do so below. Our review, for that reason, is limited to plain error. Furthermore, Wicks has no standing to challenge any disparity that might result from the operation of § 3559(c)(2)(F)(ii), because his strikes were both imposed under (F)(i). *See, e.g., Ulster County Court v. Allen*, 442 U.S. 140, 155, 99 S.Ct. 2213, 2223–24, 60 L.Ed.2d 777 (1979); *Shimer v. Washington*, 100 F.3d 506, 508 (7th Cir.1996). In any event, the argument has no merit. In *United States v. McKenzie*, 99 F.3d 813 (7th Cir.1996), we were presented with a similar equal protection challenge to 18 U.S.C. § 922(g)(1), in which Congress prohibited all individuals who had been convicted in any court of a "crime punishable by imprisonment for a term exceeding one year" from (among other things) possessing a firearm. We upheld this statute against McKenzie's equal protection arguments because felons are not a suspect class, and although states certainly can and do vary on what offenses constitute felonies, Congress rationally could decide to prohibit someone from possessing a firearm, if he has been convicted of a crime punishable by a term exceeding one year in a particular state. *McKenzie*, 99 F.3d at 819. So here, Congress rationally could decide to impose an exceptionally severe sentence on individuals with two prior convictions for serious violent felonies. Certain felonies—those described in (F)(i)—it considered serious enough to include no matter how Draconian or lenient their treatment may be under state law, while others—those described in (F)(ii)—are subject to a congressional leveler through the requirement of the ten-year term for imprisonment. There is no federalism or equal protection issue at all in (F)(i), and none that survives rational basis analysis in (F)(ii).

### C. Prosecutorial Discretion

■ Given the Supreme Court's recent discussion of prosecutorial discretion in *United States v. LaBonte*, —— U.S. ——, 117 S.Ct. 1673, 137 L.Ed.2d 1001 (1997), we need not tarry on this argument. Wicks complains that prosecutors have great power to decide which defendants may face the Three Strikes law, by virtue of their authority to file (or not to file) the "information charging prior offenses." The same argument was made with respect to the Career Offender Guideline, U.S. Sentencing Guidelines § 4B1.1. The respondents argued that prose-

cutors had great discretion to seek enhanced penalties based on prior convictions, and this in turn would affect the "offense statutory maximum" assigned to each defendant. The Supreme Court replied that:

> [i]nsofar as prosecutors, as a practical matter, may be able to determine whether a particular defendant will be subject to the enhanced statutory maximum, any such discretion would be similar to the discretion a prosecutor exercises when he decides what, if any, charges to bring against a criminal suspect. Such discretion is an integral part of the criminal justice system, and is appropriate, so long as it is not based upon improper factors.

—— U.S. at ——, 117 S.Ct. at 1679. At its root, Wicks' argument is no different from the one the Court considered; we reject it for the same reasons. *See also United States v. Washington,* 109 F.3d 335, 338 (7th Cir.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 134, —— L.Ed.2d —— (1997) (rejecting a separation of powers argument similar to that raised by Wicks).

### D. Congressional Authority under the Commerce Clause

██ Last, Wicks, relying on *United States v. Lopez,* 514 U.S. 549, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995), argues that Congress exceeded its powers under the commerce clause when it enacted the Three Strikes law. Once again, he has failed to pay adequate attention to the difference between the substantive offense for which he has been convicted and the sentence Congress has chosen to impose for that offense. Wicks was convicted for the robbery of the First National Bank of Xenia, which has its deposits insured by the Federal Deposit Insurance Corporation (FDIC). He does not argue that 18 U.S.C. § 2113 exceeds Congress' powers under the commerce clause, and any such argument would be untenable. *United States v. Wilson,* 73 F.3d 675, 694 (7th Cir.1995) (Coffey, J., dissenting); *United States v. Harris,* 108 F.3d 1107, 1109 (9th Cir.1997); *United States v. Fryer,* 896 F.Supp. 763, 764–65 (N.D.Ill.1995). If uncharged conduct may be used effectively to enhance a sentence through the Guidelines' relevant conduct rules, *see Witte v. United States, supra,* and

if conduct for which a defendant actually has been acquitted may also be so used, see *United States v. Watts, supra,* there is no reason at all why a record of prior convictions may not also figure into the calculation of a sentence for a crime within federal jurisdiction. The Supreme Court recognized in *Parke v. Raley* that the states have a valid interest in deterring and segregating habitual criminals, through the use of recidivist sentencing schemes. 506 U.S. at 27, 113 S.Ct. at 522. The federal government's interest is no less, and the commerce clause in no way places limitations on the penalties Congress may impose for infractions of federal law.

Wicks robbed one too many times, and he has now found himself imprisoned for the rest of his life as a result of the federal Three Strikes law. The penalty is a harsh one, but it is the one prescribed by Congress. We therefore AFFIRM the judgment of the district court.