**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 18-4345**

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

WILLIE JOHNSON,

Defendant – Appellant.

Appeal from the United States District Court for the Western District of Virginia, at Charlottesville. Norman K. Moon, Senior District Judge. (3:02-cr-00015-NKM-RSB-1)

Argued: December 13, 2018                                 Decided: February 6, 2019

Before WILKINSON, HARRIS, and QUATTLEBAUM, Circuit Judges.

Affirmed by published opinion. Judge Wilkinson wrote the opinion, in which Judge Harris and Judge Quattlebaum joined.

**ARGUED:** Lisa M. Lorish, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Charlottesville, Virginia, for Appellant. Jennifer R. Bockhorst, OFFICE OF THE UNITED STATES ATTORNEY, Abingdon, Virginia. **ON BRIEF:** Frederick T. Heblich, Jr., Interim Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Roanoke, Virginia, for Appellant. Thomas T. Cullen, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Roanoke, Virginia, for Appellee.

WILKINSON, Circuit Judge:

Defendant Willie Johnson challenges the district court's order resentencing him for armed bank robbery and related crimes following a successful petition vacating his original sentence under 28 U.S.C. § 2255. The district court honored the sentencing recommendation in Johnson's original plea agreement, in which the government agreed not to seek a mandatory life sentence under the federal three-strikes law. See 18 U.S.C. § 3559(c). Johnson now argues that he received no benefit from the plea agreement because his prior conviction for a New York robbery offense would not have counted as his third strike, and he thus would have been ineligible for a mandatory life sentence. We disagree. The text and structure of § 3559(c) reveal a congressional intent to encompass state laws such as the New York robbery offense here, which shares the essential characteristics of the enumerated robbery offenses under federal law. We therefore affirm the district court's sentencing decision.

## I.

The record of the sentencing hearing revealed the following: On February 1, 2002, Willie Johnson robbed federally insured Farmer and Merchants Bank in Afton, Virginia along with his then-girlfriend's son, Khalid Ahmad. Both men wore ski masks and carried firearms—Johnson an AR-15 rifle, Ahmad a .40 caliber pistol. Johnson ordered customers to get on the floor and, when one hesitated, yelled, "I told you to get down, I don't want to have to shoot nobody." J.A. 219. He then commanded tellers to stuff the bank's cash in a pillowcase, this time with less subtlety: "If you don't hurry up I'll kill you, don't think I won't kill you." *Id.* After collecting about six-thousand dollars,

2

Johnson and Ahmad sped away at more than one hundred miles-per-hour in a vehicle they had stolen earlier that morning. In the course of the attempted getaway, the men jumped a curb and drove through a school playground. They ditched the car at the edge of a forested area near the school and ran into the woods. Witnesses heard gunshots. Schoolchildren were rushed indoors. While the men evaded capture that day, they were apprehended shortly after.

A federal grand jury indicted Johnson for conspiring to commit bank robbery and conspiring to use and carry a firearm in relation to a crime of violence, in violation of 18 U.S.C. § 371 (Count One); robbing a bank with a deadly weapon, in violation of 18 U.S.C. § 2113(a) and (d) (Count Two); brandishing a semiautomatic assault weapon during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c) (Count Three); and possessing a firearm as a convicted felon, in violation of 18 U.S.C. § 922(g)(1), with three previous convictions for violent felony offenses under 18 U.S.C. § 924(e) (the Armed Career Criminal Act, or ACCA) (Collectively, Count Five).[1]

The Presentence Investigation Report also revealed the following: Johnson's criminal record, even excluding numerous juvenile adjudications and parole violations, was extensive. In 1975, Johnson assaulted a man with a pool cue, and he later pled guilty to New York assault charges. In 1976, Johnson pled guilty to New York Robbery and was sentenced to seven years' incarceration. He had robbed a man at gunpoint, pistol-whipping the man near his eye and causing a concussion. In 1983, Johnson was charged

---

[1] Count Four related to Johnson's co-conspirator.

with ten bank robberies in the United States District Court for the Eastern District of New York. He pled guilty to two of them and received a sentence of ten years' imprisonment. In 1994, he burglarized at least two homes, crimes for which he subsequently pled guilty to attempted burglary and was sentenced to 30-60 months' incarceration. In 1999, Johnson was convicted of three crimes related to breaking into a residence, for which he received three consecutive one-year terms in jail. The present offenses took place in 2002.

Federal law provides for lengthier sentences for repeat, violent offenders like Johnson. Most relevant to Johnson's case was the federal three-strikes law, which provides for a mandatory sentence of life in prison after a third conviction for a "serious violent felony." See 18 U.S.C. § 3559(c)(2)(F) (listing "robbery" as a "serious violent felony"). Leading up to Johnson's trial for the instant offenses, the United States filed an Information, see 21 U.S.C. § 851(a), a document alerting the court that Johnson had two prior "serious violent felony" convictions—specifically, Johnson's 1976 New York robbery and 1983 federal bank robbery convictions. A conviction in the 2002 bank robbery case, in other words, would have been Johnson's third strike.

Staring at a mandatory life sentence, Johnson agreed to plead guilty on the third day of trial. Johnson specified in the plea agreement, "In exchange for my pleas of guilty to the charges in the Indictment, the United States will move to dismiss the Information filed pursuant to 18 U.S.C. § 3559(c) and 21 U.S.C. § 851(a)." J.A. 23. The agreement also contained the following sentencing recommendation: "I agree to an upward departure on Count Two [bank robbery] to the maximum statutory sentence for that

charge [of 300 months]. I agree to this recommendation, in exchange for the United States moving to dismiss the Information that would otherwise enhance my sentence to mandatory life imprisonment." J.A. 24.

The United States honored its end of the bargain by dismissing the Information. The United States District Court for the Western District of Virginia then held Johnson to his end of the bargain, imposing concurrent 300-month sentences for bank robbery (Count Two) and under the Armed Career Criminal Act (Count Five), along with a concurrent 60-month sentence for the conspiracy charge (Count One). This sentence fell within Johnson's then-mandatory guidelines range of 262-327 months. The district court also sentenced Johnson to 120 months in prison for brandishing a semiautomatic assault weapon during and in relation to a crime of violence (Count Three), to be served consecutively. Johnson's effective sentence totaled 420 months in prison.

About a dozen years later, the Supreme Court ruled that ACCA's residual clause was impermissibly vague under the Fifth Amendment's Due Process Clause. See *Johnson v. United States*, 135 S. Ct. 2551, 2563 (2015). The defendant then filed a petition under 28 U.S.C. § 2255, seeking to vacate his 420-month sentence because Count Five had included a charge based on ACCA's residual clause. See 18 U.S.C. § 924(e)(2)(B). There remained a dispute whether ACCA still applied to Johnson without the residual clause. ACCA properly applied if Johnson had three previous "violent felony" convictions. *Id.* A violent felony includes a state felony that "has as an element the use, attempted use, or threatened use of physical force against the person of another." 18 U.S.C. § 924(e) (the force clause). Johnson effectively conceded that his two 1983 federal bank robbery

5

convictions counted as violent felonies. See *United States v. McNeal*, 818 F.3d 141, 153 (4th Cir. 2016) (18 U.S.C. § 2113 qualifies under ACCA's force clause). The parties disagreed as to whether Johnson's 1976 New York third-degree robbery conviction required as an element the use of physical force.

The district court ultimately sided with the defendant. Under that ruling, Johnson no longer qualified as an armed career criminal, and his existing sentence on Count Five therefore exceeded the statutory maximum for a felon-in-possession charge without the ACCA enhancement. The court granted Johnson's § 2255 petition and vacated his existing sentence in full under the sentencing package doctrine, which provides that "when a defendant is found guilty on a multicount indictment, there is a strong likelihood that the district court will craft a disposition in which the sentences on the various counts form part of an overall plan, and that if some counts are vacated," the judge should revisit the sentences on all the remaining counts. *United States v. Ventura*, 864 F.3d 301, 309 (4th Cir. 2017) (internal quotation marks omitted).

The United States Probation Office prepared a new Presentence Investigation Report reflecting the district court's determination that Johnson was not an armed career criminal under ACCA, and also not listing him as a career offender under the Sentencing Guidelines, resulting in an amended guidelines range of 130-162 months. The district court resentenced Johnson to 60 months for possessing a firearm as a convicted felon (Count Five), instead of the original 300-month sentence that reflected the ACCA enhancement.

6

The sentencing court, however, imposed the same sentences as before on the remaining counts after considering the original plea agreement and the § 3553(a) factors. The court observed "that the offense conduct was very serious, exposing both the individuals at the bank as well as those in [the] path of his flight to danger." J.A. 203. It also rejected Johnson's argument that his sentence should be reduced because of his age. Johnson's "extreme criminal history," coupled with a present offense that was "one of the worst that ha[d] come before the [c]ourt," demonstrated that "Johnson is a danger to society whenever he has been out of prison." *Id.* 204.

The court found that Johnson agreed to plead guilty and accept the maximum sentence for bank robbery in exchange for the government's moving to dismiss the Information filed under the three-strikes law. 18 U.S.C. § 3559(c). That law applies mandatory life sentences to convictions for a serious violent felony for those defendants who were previously convicted "on separate prior occasions" of at least two other serious violent felonies. *Id.* The present offense and the two prior offenses together counted as the three strikes. Johnson's 1976 New York robbery conviction, his 1983 federal bank robbery conviction, and his federal bank robbery conviction in the present case, in the district court's view, each would have counted as a strike. "Because Johnson would still be eligible for mandatory life imprisonment [under § 3559(c)], he is still receiving the benefit of avoiding a much higher sentence." J.A. 203. The district court therefore resentenced Johnson to "the parties' prior recommended sentence [for] the aggravated bank robbery charge in the plea agreement" in order to "honor[] the original plan . . .

7

[that] the parties agreed to." J.A. 203. In the end, the reduced sentence on the firearm possession count did not alter the original effective sentence of 420 months.

## II.

Johnson now asks this court to vacate his new sentence. His principal argument is that the district court made a legal error in concluding that his New York robbery conviction would count as a third strike under the federal three-strikes law, which lists robbery as a qualifying offense. 18 U.S.C. § 3559(c). We review the sentencing court's legal conclusion interpreting § 3559(c) de novo. *United States v. Moore*, 666 F.3d 313, 320 (4th Cir. 2012). Because we agree with the district court's conclusion that New York robbery counts as an enumerated robbery offense and that Johnson thus continued to receive the benefit of his original bargain, we affirm.[2]

## A.

The federal three-strikes law provides for mandatory life in prison for criminals who are convicted of their third "serious violent felony." 18 U.S.C. § 3559(c). There is no question that Johnson's two federal bank robbery convictions under 18 U.S.C. § 2113—the 1983 conviction and the 2002 conviction in the instant case—count as two strikes against him. 18 U.S.C. § 3559(c)(2)(F)(i) (listing "robbery []as described in" 18 U.S.C.

---

[2] Johnson may also have borne the risk that his plea agreement would prevent him from taking advantage of subsequent legal developments. See *McMann v. Richardson*, 397 U.S. 759, 774 (1970). Since the district court's decision rested upon the fact that Johnson continued to receive the benefit of his plea agreement, we too rest our decision on that ground. See *Hughes v. United States*, 138 S. Ct. 1765, 1777 (2018). We thus need not address the question of the extent to which Johnson's plea agreement assumed the risk of foregoing subsequent legal developments in his favor.

§ 2113). What remains is whether Johnson's 1976 New York robbery conviction counts as strike three.

We begin, as always, with the text of the statute. Congress defined a serious violent felony to include:

> (i) a Federal or State offense, by whatever designation and wherever committed, consisting of murder (as described in section 1111); manslaughter other than involuntary manslaughter (as described in section 1112); assault with intent to commit murder (as described in section 113(a)); assault with intent to commit rape; aggravated sexual abuse and sexual abuse (as described in sections 2241 and 2242); abusive sexual contact (as described in sections 2244 (a)(1) and (a)(2)); kidnapping; aircraft piracy (as described in section 46502 of Title 49); robbery (as described in section 2111, 2113, or 2118 [of Title 18]); carjacking (as described in section 2119); extortion; arson; firearms use; firearms possession (as described in section 924(c)); or attempt, conspiracy, or solicitation to commit any of the above offenses; and
>
> (ii) any other offense punishable by a maximum term of imprisonment of 10 years or more that has as an element the use, attempted use, or threatened use of physical force against the person of another or that, by its nature, involves a substantial risk that physical force against the person of another may be used in the course of committing the offense[.]

18 U.S.C. § 3559(c)(2)(F). The statutory text includes the familiar three-part structure, with an enumerated clause, a force clause, and a residual clause. Johnson argues that § 3559(c)'s force clause does not apply to him because his robbery conviction was not "punishable by a maximum term of imprisonment of 10 years or more . . . ." 18 U.S.C. § 3559(c)(2)(F)(ii); see N.Y. Penal Law § 160.05 ("Robbery in the third degree is a class D felony."); *id.* § 70.00(2)(d) (Class D felonies are punishable by a maximum of seven years.). As to the residual clause, Johnson argues that it is unconstitutionally vague under the Supreme Court's precedents *Johnson*, 135 S. Ct. 2551, and *Dimaya*. *Sessions v.*

9

*Dimaya*, 138 S. Ct. 1204 (2018). The district court, for its part, rested its case on the enumerated clause. The question, therefore, boils down to this: Did Congress intend to include New York third degree robbery as a serious violent felony in its listing of specific crimes in § 3559(c)?

The answer, unsurprisingly, is yes. Congress, after all, specifically listed robbery as a qualifying state offense. The statutory language in § 3559(c) asks whether the "Federal or State offense," not a defendant's actions, "consist[s] of" an enumerated offense. 18 U.S.C. § 3559(c)(2)(F)(i). We will thus apply a "categorical approach," meaning that we will compare the New York robbery statute, rather than the facts underlying Johnson's convictions, to the federal statutes that Congress referenced to describe robbery in the three-strikes law. *Id.* (describing robbery by reference to 18 U.S.C. §§ 2111, 2113, 2118); see also *United States v. McNeal*, 818 F.3d 141, 152 (4th Cir. 2016) (describing categorical approaches in general).

Statutes requiring application of a categorical approach may be worded differently, but the ultimate inquiry remains the same: What in fact was the congressional intent? Congress faced no small task in writing the three-strikes law in a way that would incorporate the contours and nuances of myriad state criminal codes, especially with the understanding that those codes will develop over time. With that in mind, Congress could hardly have been clearer in the text of the statute that § 3559(c)'s enumerated clause should be understood broadly. It listed more than a dozen distinct types of criminal offenses. Cf. 18 U.S.C. § 924(e)(2)(B)(ii) (ACCA, listing only three). And the enumerated clause either directly describes each crime in § 3559(c)(2) (*e.g.*, arson,

10

extortion, and kidnapping), or, more often, describes that crime by cross reference to another federal statute (*e.g.*, robbery, carjacking, and firearms possession).

Moreover, Congress began the definition with prefatory language of greater rather than lesser inclusion: a "serious violent felony" includes "a Federal or State offense, by whatever designation and wherever committed." This broad language has no counterpart in ACCA, and was no doubt meant to capture a wide variety of state and federal offenses. "It is hard to see why Congress would have used this language, if it had meant that every detail of the federal offense, including its jurisdictional elements, had to be replicated in the state offense." *United States v. Wicks*, 132 F.3d 383, 386-87 (7th Cir. 1997). A straightforward interpretation of this language calls upon courts to look to the essential nature of a crime, not to minor definitional tweaks or wrinkles in individual jurisdictions.

Following that broad prefatory language, § 3559(c) references other federal robbery offenses using the words "described in" rather than "defined in." This is a meaningful distinction, since "'described in' is the broader of the two terms." *Espinal-Andrades v. Holder*, 777 F.3d 163, 168 (4th Cir. 2015) (discussing identical language in a different statutory context). The edition of Black's Law Dictionary at the time of § 3559(c)'s passage confirms this understanding. Compare "Define," *Black's Law Dictionary* (5th ed. 1979) ("To explain or state the exact meaning of words and phrases . . . ."), with "Describe," *Black's Law Dictionary* (5th ed. 1979) ("To narrate, express, explain . . . ."). "Bearing the plain meaning of 'define' and 'describe' in mind, it appears as if Congress intended for the [crimes] 'described in' the pertinent federal

11

statute to include crimes that are not 'defined in'—that is, precisely identical to—that federal statute." *Espinal-Andrades*, 777 F.3d at 168.

Our inquiry, of course, does not end there, for we "interpret the relevant words not in a vacuum, but with reference to the statutory context." *Torres v. Lynch*, 136 S. Ct. 1619, 1626 (2016) (interpreting statute using "described in" as a cross-reference to another federal statute). And the statutory context of § 3559(c) points decidedly towards inclusivity. That is nowhere truer than for robbery. Section 3559(c)(3)(A) exempts robberies (but not other enumerated offenses) from counting under the three-strikes law if a defendant can "establish[] by clear and convincing evidence that—(i) no firearm or other dangerous weapon was used in the offense and no threat of use of a firearm or other dangerous weapon was involved in the offense; and (ii) the offense did not result in death or serious bodily injury (as defined in section 1365) to any person." In other words, if a defendant can prove (which Johnson cannot) that his robbery did not involve a dangerous weapon or a serious injury, then the offense is not a qualifying strike. In light of this language, courts must be especially cautious in carving exceptions to § 3559(c) for the various state robbery offenses. Congress has already provided a fact-based escape hatch; courts are not at liberty to create additional ones.

B.

With those principles in mind, we must now determine whether Congress's understanding of robbery in § 3559(c) maps on to the elements of New York's crime of robbery in the third degree. See *McNeal*, 818 F.3d at 152. Johnson's robbery conviction may not qualify as a serious violent felony under § 3559(c)'s enumerated clause if the

12

New York statute applies to conduct outside the broad language Congress used to describe the enumerated robbery offense under the three-strikes law.

In New York, "The essence of the crime of robbery is forcible stealing." *People v. Miller*, 661 N.E.2d 1358, 1360 (N.Y. 1995); see also *United States v. Hammond*, 912 F.3d 658, 661-65 (4th Cir. 2019) (emphasizing the violent nature of the force required by New York's robbery laws). Johnson's conviction was for third degree robbery. "A person is guilty of robbery in the third degree when he forcibly steals property." N.Y. Penal Law § 160.05. Forcible stealing means:

> [W]hen, in the course of committing a larceny, [a person] uses or threatens the immediate use of physical force upon another person for the purpose of:
>
> 1. Preventing or overcoming resistance to the taking of the property or to the retention thereof immediately after the taking; or
>
> 2. Compelling the owner of such property or another person to deliver up the property or to engage in other conduct which aids in the commission of the larceny.

N.Y. Penal Law § 160.00.

New York's robbery offense reflects the essence of robbery as Congress described it in § 3559(c). The federal statute defines "serious violent felony" to include "a Federal or State offense, by whatever designation and wherever committed, consisting of . . . robbery (as described in section 2111, 2113, or 2118 [of Title 18])." 18 U.S.C. § 3559(c)(2)(F)(i). The statute references the federal offenses of maritime or territorial robbery (§ 2111), bank robbery (§ 2113), and robbery of a controlled substance (§ 2118). These references are joined with the disjunctive "or," meaning that a state crime that matches even one of those statutes must count as a strike. The maritime and territorial

13

statute provides the cleanest language describing a robbery: "Whoever, within the special maritime and territorial jurisdiction of the United States, by force and violence, or by intimidation, takes or attempts to take from the person or presence of another anything of value, shall be imprisoned not more than fifteen years." 18 U.S.C. § 2111. The bank robbery and controlled substance robbery statutes define robbery in materially the same way, with the different jurisdictional hooks previewed by their titles.[3]

On those definitions, we agree with the district court's conclusion that "Johnson would still be eligible for mandatory life in prison, as a robbery is an enumerated offense." J.A. 202. The essence of both the federal and state robbery offenses is a theft or attempted theft by use of force. Where New York requires a defendant to "use[] or threaten[] the immediate use of physical force upon another person," the federal statutes require that the taking be done "by force and violence, or by intimidation," 18 U.S.C.

---

[3] The relevant text of those statutes is as follows: 18 U.S.C. § 2113(a) ("Whoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another, or obtains or attempts to obtain by extortion any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank, credit union, or any savings and loan association . . . ."); 18 U.S.C. § 2118(a) ("Whoever takes or attempts to take from the person or presence of another by force or violence or by intimidation any material or compound containing any quantity of a controlled substance belonging to or in the care, custody, control, or possession of a person registered with the Drug Enforcement Administration under section 302 of the Controlled Substances Act (21 U.S.C. 822) shall . . . be fined under this title or imprisoned not more than twenty years, or both, if (1) the replacement cost of the material or compound to the registrant was not less than $500, (2) the person who engaged in such taking or attempted such taking traveled in interstate or foreign commerce or used any facility in interstate or foreign commerce to facilitate such taking or attempt, or (3) another person was killed or suffered significant bodily injury as a result of such taking or attempt.").

14

§ 2111. Similarly, where New York requires a larceny, the federal statutes penalize the "tak[ing of] . . . anything of value," *id.* We agree with the Second Circuit that New York robbery matches robbery as used in § 3559(c). Since New York robbery's "statutory elements parallel those required to establish robbery under 18 U.S.C. §§ 2111, 2113(a), and 2118(a), there can be no question that New York State convictions for first and second degree robbery by definition qualify as serious violent felonies under § 3559(c)(2)(F)(i)." *United States v. Snype*, 441 F.3d 119, 144 (2d Cir. 2006). This conclusion is no less true for Johnson's third-degree robbery conviction, as "the core crime of New York robbery, irrespective of degree, is defined as forcibly stealing property." *Hammond*, 912 F.3d at 662 (internal quotation marks and alterations omitted).[4]

It should go without saying, of course, that New York does not use the exact same words to describe robbery as do the federal robbery statutes. Congress could hardly have expected the fifty states to cut-and-paste federal verbiage into every state law. Using different words to prohibit the same conduct, therefore, poses no barrier to a match in the

---

[4] Johnson encourages us to discount *Snype*, which interpreted § 3559(c), in favor of a recent Second Circuit decision holding that New York robbery is not "a 'crime of violence' under the 'enumerated offenses' in application note 1(B)(iii) to Section 2L1.2 of the 2014 [Sentencing] Guidelines." *United States v. Pereira-Gomez*, 903 F.3d 155, 161 (2018). In that case, the Second Circuit compared New York robbery to the generic offense of robbery, finding that the state offense was not a "crime of violence" because it lacked a presence requirement. *Id.* at 161-64. But this is not a case about the Guidelines or the generic robbery offense. This is a case about § 3559(c). No matter how New York robbery might or might not compare with the generic robbery offense, we note here that § 3559(c) describes robbery with sufficient breadth to include New York robbery. Moreover, *Pereira-Gomez* did not mention *Snype*, and we assume the Second Circuit would not overrule *sub silentio* its prior precedent. And while we are not, of course, bound by decisions of other circuits, we find *Snype*, in all events, to be persuasive.

15

§ 3559(c) context. For example, New York law specifies the ways that force or a threat of force could be used in the commission of a robbery, including by "[c]ompelling the owner of such property or another person to deliver up the property or to engage in other conduct which aids in the commission of the larceny." N.Y. Penal Law § 160.00. This language, however, deviates in no material respect from federal law's concise force requirement, which prohibits those very same types of conduct.

Take, for example, the federal bank robbery statute, which proscribes a taking "by force and violence, or by intimidation . . . from the person or presence of another." 18 U.S.C. § 2113(a). The reference to § 2113(a)'s person or presence requirement, however, indicates no intention to exclude the New York law. In *United States v. Hackett* this court "conclude[d] that property is taken from a bank in the presence of another when bank officers are induced by threats of violence to leave the bank's money at a pre-arranged drop site." 623 F.2d 343, 345 (4th Cir. 1980). The federal bank robbery statute, in other words, penalizes robbery through delivery just like the New York statute. N.Y. Penal Law § 160.00 (including robbery by "[c]ompelling the owner of such property or another person to deliver up the property").

The New York robbery statute also prohibits robbery by using force to compel another person to "aid[] in the commission" of the offense. *Id.* Federal law, too, covers robbery by conscription. For example, when "a robber forces a bank's customer to withdraw money, the customer becomes the unwilling agent of the robber, and the bank is robbed." *United States v. Durham*, 645 F.3d 883, 893 (7th Cir. 2011) (internal quotation marks and alterations omitted). Section 3559(c) thus concisely describes

16

robbery in a way that traces New York's articulation of the same. To rule otherwise would assume that Congress, through inclusive language, somehow meant to exclude the robbery statutes of almost twenty different states which may not have a presence requirement, but which do share with the referenced federal statutes the essential elements of taking from another by force and violence, or by intimidation.[5]

The Supreme Court has repeatedly cautioned against interpreting federal statutes to exclude state offenses that employ language common among the several states. To take but one example, the Court just recently rejected a reading of ACCA that would have excluded "many States' robbery statutes" from qualifying as predicate offenses. *Stokeling v. United States*, 139 S. Ct. 544, 552 (2019). "Where, as here, the applicability of a federal criminal statute requires a state conviction," we must follow the Court's lead in "declin[ing] to construe the statute in a way that would render it inapplicable in many States." *Id.*

Despite the congruence between New York's robbery statute and § 3559(c)'s robbery offense, Johnson argues that New York robbery is distinct from the federal

---

[5] At least nineteen states do not include a narrow presence requirement in their definition of robbery. Wayne R. LaFave, *3 Subst. Crim. L.* § 20.3(c), at n.42 (3d ed. 2018 update) (compiling state statutes); see Ala. Code § 13A-8-43; Ark. Code Ann. § 5-12-102; Conn. Gen. Stat. § 53a-133; Del. Code Ann. tit. 11, § 831; Haw. Rev. Stat. § 708-840; Iowa Code § 711.1; Ky. Rev. Stat. Ann. § 515.020; Me. Stat. tit. 17-A, § 651; Mo. Ann. Stat. § 570.023; Mont. Code Ann. § 45-5-401; N.H. Rev. Stat. Ann. § 636:1; N.J. Stat. Ann. § 2C:15-1; N.Y. Penal Law § 160.00; N.D. Cent. Code § 12.1-22-01; Ohio Rev. Code Ann. § 2911.02; Or. Rev. Stat. § 164.395; 18 Pa. Cons. Stat. § 3701; Tex. Penal Code Ann. § 29.02; Wyo. Stat. § 6-2-401; see also *Model Penal Code* § 222.1(1) (Am. Law Inst. 1962) (including no presence requirement).

robbery offenses because it need not occur in the special maritime or territorial jurisdiction of the United States (as in § 2111), take place in a bank (§ 2113), or involve a controlled substance (§ 2118). This argument is not persuasive. These jurisdictional elements are not essential to robbery in § 3559(c). Take § 2111, the maritime and territorial robbery statute, for example. Congress surely did not seek to exempt Johnson from the three-strikes law simply because his *state* robbery conviction did not have an element requiring the crime to occur within the *federal* territorial or maritime jurisdiction of the United States. That would be quite an odd element to find in a state criminal offense. Indeed, the Supreme Court has ignored jurisdictional elements of federal crimes when comparing them to state offenses in the context of statutes that, as here, use the "described in" terminology. See *Torres*, 136 S. Ct. 1619. Even more clearly, § 3559(c)(2)(F) specifically includes a "State offense . . . wherever committed"—*i.e.*, in a special federal jurisdiction or not.

All in all, we are left with the conviction that Congress intended robbery under the three-strikes law to encompass New York robbery in the third degree. The statute uses language of greater inclusion time and time again when describing the variety of state offenses that qualify under its enumerated clause. And the essence of robbery in New York is just the same as that of the federal robbery statutes that § 3559(c) references, which is a taking from another by force and violence, or by intimidation. See *Hammond*, 912 F.3d at 662-63 (describing New York robbery offense). For these reasons, we affirm the district court's conclusion that Johnson's New York robbery conviction qualifies as a "serious violent felony" under the federal three-strikes statute's enumerated clause.

18

III.

Johnson also argues that the district court should not have considered his original plea agreement during his resentencing. That plea agreement, in Johnson's view, was based on mutual mistakes in believing that he was an armed career criminal and career offender, both of which increased his then-mandatory guidelines range. But at bottom, Johnson exchanged a guilty plea and sentencing recommendation for the government's agreement not to seek a mandatory life sentence under § 3559(c). Johnson has continued to benefit from the agreement at resentencing by avoiding the mandatory life sentence. The district court therefore acted well within its discretion in considering the earlier plea agreement when imposing a new sentence on Johnson.

The sentencing court's decision whether to consider certain facts is an element of procedural reasonableness, *Ventura*, 864 F.3d at 311, which we review for an abuse of discretion, *United States v. Susi*, 674 F.3d 278, 282 (4th Cir. 2012). With respect to plea agreements, "A plea agreement is 'essentially a contract between an accused and the government' and is therefore subject to interpretation under the principles of contract law." *United States v. Davis*, 689 F.3d 349, 353 (4th Cir. 2012) (quoting *United States v. Lewis*, 633 F.3d 262, 269 (4th Cir. 2011)). As contracts, plea agreements are voidable when both parties make a mistake "as to a basic assumption on which the contract was made," that mistake "has a material effect on the agreed exchange of performances," and the party seeking to void the contract does not "bear[] the risk of the mistake." Restatement (Second) of Contracts § 152 (Am. Law Inst. 1981; October 2018 Update).

19

The Supreme Court recently affirmed that district courts "can consider the benefits the defendant gained by entering a Type–C" plea agreement when reconsidering a sentence even after the guidelines range has been retroactively lowered. *Hughes v. United States*, 138 S. Ct. 1765, 1777 (2018). The agreed-upon sentence in a Type–C plea agreement, unlike the sentencing recommendation in Johnson's plea agreement, is binding on the sentencing court. If sentencing courts may consider mandatory plea agreements that were based on subsequently modified guidelines ranges, then courts may surely consider an agreement that merely recommended a sentence to the court.[6]

Moreover, Johnson continued to enjoy his benefit from the plea agreement at his resentencing hearing—namely, he avoided a mandatory life sentence. That was the heart of his plea agreement. The agreement plainly said as much. J.A. 23 ("In exchange for my pleas of guilty to [all four] charges in the Indictment, the United States will move to dismiss the Information filed pursuant to 18 U.S.C. § 3559(c) and 21 U.S.C. § 851(a)."). And Johnson agreed to recommend the maximum sentence on the bank robbery count for the same reason. J.A. 24 ("I agree to an upward departure on Count Two [bank robbery] to the maximum statutory sentence for that charge. I agree to this recommendation, in exchange for the United States moving to dismiss the Information that would otherwise

---

[6] Indeed, Justice Sotomayor specifically described in her concurrence a situation like what we have here: "[T]here may be circumstances in which the Government makes substantial concessions in entering into a Type–C agreement with a defendant—*e.g.*, by declining to pursue easily proved and weighty sentencing enhancements—such that there is a compelling case that the agreed-upon sentence in the Type–C agreement would not have been affected if the subsequently lowered Guidelines range had been in place at the relevant time. If such circumstances exist, I expect that district courts will take that into account . . . ." *Id.* at 1780 n.2 (Sotomayor, J., concurring).

enhance my sentence to mandatory life imprisonment."). The mutual mistakes Johnson alleges (assuming, for present purposes, that they were indeed mistakes) did not materially affect the exchange of performances or deprive Johnson of the benefits for which he bargained. The district court was well within its discretion to provide the United States with its benefit from the bargain by resentencing Johnson to the maximum sentence on the bank robbery count.

It bears mention that the able district judge here conducted Johnson's sentencing with care and patience. He calculated the advisory guidelines range and explained exactly why the sentencing factors of § 3553(a) warranted an upward variance from the range. Johnson's chief argument at sentencing was that he had aged out of his prime crime years. The district court considered this argument to be outweighed by the violent and extensive character of his crimes, spread over many decades, and the fact that he had agreed to the sentence imposed in exchange for the government's agreement not to pursue a mandatory life sentence. We need not dwell in detail upon the full extent of Johnson's daunting criminal record in order to conclude that the sentence was procedurally and substantively reasonable and in accord with all requirements of law. The district court's decision resentencing Johnson is therefore

*AFFIRMED*.